[No. B170438. Second Dist., Div. Eight. Dec. 9, 2004.]

ARTHUR S. LUJAN, as Labor Commissioner, etc., Plaintiff and Appellant,
v.
SHALA MINAGAR, Defendant and Respondent.

**COUNSEL**

Edna Garcia Earley for Plaintiff and Appellant.

Joan C. Lavine for Defendant and Respondent.

**OPINION**

**RUBIN, J.**—State Labor Commissioner Arthur S. Lujan appeals from the judgment dismissing his action against Shala Minagar for retaliatory job termination under the state's Occupational Safety and Health Act. (Lab. Code, § 6310.) For the reasons set forth below, we reverse and remand with directions to enter a new and different judgment in favor of the Labor Commissioner, including a determination of the amount of damages, if any.

## FACTS AND PROCEDURAL HISTORY

Shala Minagar owns a beauty salon in Malibu. On September 7, 1999, Minagar's shop was inspected and cited for several minor workplace safety violations under the California Occupational Safety and Health Act. (Lab. Code, § 6300 et seq. (Cal-OSHA).)[1] The inspection came in response to a complaint by Susan Grana, who worked as a facialist at the salon. Minagar fired both Grana and hair stylist Noelle Dianella that same day.

---

[1] All further undesignated section references are to the Labor Code.

In response, the state Labor Commissioner (the Commissioner) cited Minagar for firing Dianella in retaliation for the Cal-OSHA complaint. (§ 6310.)[2] Minagar's appeal to the Department of Industrial Relations was rejected and Minagar was ordered to rehire Dianella with backpay. When Minagar refused to comply, the Commissioner sued to enforce his order. (§ 98.7, subd. (c).) At trial, Grana and Dianella testified that Dianella played no part in contacting Cal-OSHA inspectors. According to Dianella, salon manager Pam Evans told her she had been fired because it was believed Dianella assisted Grana with the complaint. Dianella testified that after speaking with Evans, she phoned Minagar, who told Dianella she must have known of the investigation because she was Grana's good friend and should have warned Minagar about it. Minagar testified, however, that she knew Dianella had not filed the Cal-OSHA complaint. Instead, Minagar testified that Dianella had been an incompetent and troublesome employee. According to Minagar, she fired Dianella "because she did too many mistakes in my shop and I [was] afraid she will be next one to report me."

Section 6310 makes it unlawful to fire or otherwise retaliate against an employee who makes a workplace safety complaint with government agencies.[3] At the close of the trial, Minagar moved to dismiss the Commissioner's action on two grounds: (1) because Dianella was an independent contractor, not an employee protected by Cal-OSHA; and (2) on jurisdictional grounds, because it was undisputed that Dianella had not made any complaint with Cal-OSHA. The trial court found that Dianella was an employee, not an independent contractor. It found that she was fired in "retaliation for the conduct of Susan Grana." The court also found that Grana's complaint to Cal-OSHA was a substantial factor in the decision to fire Dianella and that Dianella would not have been fired but for that complaint. Even so, because Dianella herself had not made a Cal-OSHA complaint, the court found that the jurisdictional prerequisites of section 6310 had not been satisfied, dismissed the action, and entered judgment for Minagar. On appeal, the Commissioner contends that section 6310 should be liberally construed to cover an employee such as Dianella, who did not personally report suspected workplace safety violations, but who was fired because her employer feared she might soon do so.

---

[2] The record is silent as to whether such an action was ever filed on behalf of Grana.

[3] Section 6310 states: "(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: [¶] (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative. [¶] (2) Instituted or caused to be instituted any proceeding under or relating to his or her rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of himself, herself, or others of any rights afforded him or her."

## DISCUSSION

### 1. *Section 6310 Applies to Employers Who Retaliate Against Employees They Fear Might File a Complaint*

The Commissioner acknowledges that section 6310, by its terms, does not apply to Dianella because she did not make a workplace safety complaint. Because Cal-OSHA is to be liberally construed (*Rick's Electric, Inc. v. Occupational Safety & Health Appeals Bd.* (2000) 80 Cal.App.4th 1023, 1037 [95 Cal.Rptr.2d 847]), and because section 6310 is designed to encourage employees to report workplace safety violations (*Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 298 [188 Cal.Rptr. 159]), the Commissioner believes restricting section 6310 to its literal terms would produce an absurd result not intended by the Legislature. He therefore asks us to interpret the statute broadly enough to cover employees like Dianella who are fired because their employers fear they will make a workplace safety complaint. (*People v. Belton* (1979) 23 Cal.3d 516, 526 [153 Cal.Rptr. 195, 591 P.2d 485] [statute will not be literally applied if to do so produces absurd result contrary to legislative intent].)

Only one reported California decision has addressed the jurisdictional prerequisites of section 6310. The court in *Division of Labor Law Enforcement v. Sampson* (1976) 64 Cal.App.3d 893 [135 Cal.Rptr. 23] (*Sampson*), held that because section 6310 as written applied to workers who actually made a workplace safety complaint to a government agency, the statute did not cover a worker who instead claimed he was fired after making informal safety complaints to his employer. (*Sampson* at pp. 897–898.)[4] While the restrictive approach taken in *Sampson* seems contrary to the result urged by the Commissioner, neither party has cited that decision. Instead, the Commissioner points to federal cases interpreting the similarly worded anti-retaliation provisions of different federal statutes. (*Sauers v. Salt Lake County* (10th Cir. 1993) 1 F.3d 1122, 1127–1129 (*Sauers*) [prima facie case of retaliation in sex harassment case existed where evidence showed supervisor reassigned the plaintiff because he feared she would bring a harassment claim]; *U.S.E.E.O.C. v. Bojangles Restaurants, Inc.* (M.D.N.C. 2003) 284 F.Supp.2d 320, 328 [title VII antiretaliation provision applies to anticipatory

---

[4] The court in *Skillsky v. Lucky Stores, Inc.* (9th Cir. 1990) 893 F.2d 1088, also examined section 6310 insofar as it might support a common law tort claim for wrongful termination in violation of public policy. The plaintiff in that case was a truck driver who was fired by his new employer after it learned the plaintiff had once made a workplace safety complaint against plaintiff's previous employer. The Ninth Circuit noted that section 6310 said "[n]o person" shall discriminate against any employee because that employee has made a workplace safety complaint. Because the statute did not limit itself to claims made by an employee against its current employer, the court believed it was reasonable to conclude that section 6310 applied in that case. (*Id.* at pp. 1093–1094.)

retaliation, including employers who fire workers they fear will bring such claims].) Because Cal-OSHA is patterned after its federal counterpart (*Hentzel v. Singer Company, supra,* 138 Cal.App.3d at p. 300 [comparing Cal-OSHA with 29 U.S.C. § 651 et seq. (OSHA)]), and because the federal OSHA statute is similar to other federal antiretaliation laws, the Commissioner urges us to follow these federal authorities. (*Alcala v. Western Ag Enterprises* (1986) 182 Cal.App.3d 546, 550 [227 Cal.Rptr. 453] [when California laws are patterned after federal statutes, federal decisions interpreting the federal provisions are persuasive authority].)[5]

We do not believe that the restrictive approach taken in *Sampson, supra,* 64 Cal.App.3d 893, applies. *Sampson* is factually distinguishable because the issue was whether informal complaints to the employer sufficed, not whether preemptive termination to head off a complaint was actionable. The decision is also inapplicable because it did not consider the extent to which section 6310 should be liberally construed or whether the restrictive interpretation produced an absurd result. (*Trope v. Katz* (1995) 11 Cal.4th 274, 284 [45 Cal.Rptr.2d 241, 902 P.2d 259] [the language of an opinion must be construed with reference to the facts of the case; the positive authority of a decision goes no farther than those facts; and a decision is not authority merely for what it says, but for the points actually involved and actually decided].)

■ We agree with the Commissioner that firing workers who are suspected of planning to file workplace safety complaints can effectively discourage the filing of those complaints. We also agree that allowing such preemptive retaliation would be at odds with section 6310's apparent intent—to encourage such complaints and to punish employers who retaliate against employees as a result. (*Sauers, supra,* 1 F.3d at p. 1128 ["Action taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact; . . ."].) To hold otherwise would create a perverse incentive for employers to retaliate against employees who they fear are about to file workplace safety complaints before the employees can do so, therefore avoiding liability under section 6310. We do not believe the Legislature could have possibly intended such an absurd result, which could be depicted by an image of an employer following an employee and firing him or her just before the employee reached the Cal-OSHA filing window, complaint in

[5] Pointing to various federal court decisions interpreting similarly worded anti-retaliation provisions, the Commissioner also asks us to reverse based on evidence of three other types of retaliation: (1) Minagar's retaliation against Dianella because she was Grana's friend; (2) Minagar's mistaken belief that Dianella had taken part in making the complaint along with Grana; and (3) Minagar's belief that Dianella knew about Grana's complaint ahead of time and failed to warn Minagar. Because we hold that reversal and a new judgment are compelled by Minagar's admission that she fired Dianella out of fear that Dianella would be the next to complain to Cal-OSHA, we need not reach these other issues.

hand. (See *Robinson v. Shell Oil Co.* (1997) 519 U.S. 337, 346 [136 L.Ed.2d 808, 117 S.Ct. 843] [former employer gave bad job reference to former employee who had filed discrimination claim; although retaliation statute referred to actions against employees, it was proper to construe the phrase to apply to former employees as well. A contrary holding would "undermine the effectiveness" of title VII by allowing the threat of post-employment retaliation to deter EEOC complaints, "and would provide a perverse incentive for employers to fire employees who might bring Title VII claims."].) We therefore hold that section 6310 applies to employers who retaliate against employees whom they believe intend to file workplace safety complaints.

2. *Minagar's Undisputed Admission of Her Intent Compels Us to Reverse and Enter a New Judgment*

At trial, during direct examination by her own lawyer, Minagar testified that she fired Dianella in part because she was afraid Dianella would be the next one to file a complaint. It is the only direct evidence of Minagar's state of mind when she fired Dianella, and, as the trial court noted after first hearing the statement, it was in the nature of a "confession." Minagar was not questioned further about her statement by her own counsel or counsel for the Commissioner. During argument on the section 6310 jurisdictional motion, Minagar's lawyer said Minagar had been "painfully honest" when she "blurted out" her reason for firing Dianella. After a lunch break, however, Minagar's lawyer contended that because Minagar's English language skills were poor, she might have misspoken or misunderstood what she said. The trial court rejected that contention, finding that Minagar was a successful business owner who spoke English with clarity and who made the comment without equivocation or ambiguity. It therefore appears that the trial court believed Minagar's admission that she fired Dianella because she believed Dianella would be the next employee to file a workplace safety complaint.

■ On this record, we also believe that the trial court had no choice but to accept that testimony. A court may not disregard or reject the uncontradicted and undisputed testimony of a witness unless that testimony is inherently improbable or other circumstances such as the witness's demeanor, bias, or motives, create a logical basis for doing so. (*Edmondson v. State Bar* (1981) 29 Cal.3d 339, 342–343 [172 Cal.Rptr. 899, 625 P.2d 812]; *DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1270 [6 Cal.Rptr.2d 267].) There was nothing improbable, inconsistent, evasive, or otherwise indicative of untrustworthiness about Minagar's testimony. It was, as the trial court noted, confessional, making it all the more trustworthy. Minagar made no evidentiary attempt to explain or cast doubt on her statement. On appeal, she has not mentioned it at all. ■ Because the trial court indicated its belief in the testimony, and because the court was not free to disregard it in any

event, we hold that Minagar's admission that she fired Dianella in part to head off an anticipated workplace safety complaint, constitutes undisputed evidence of Minagar's intent. (See *Mar Shee v. Maryland Assur. Corp.* (1922) 190 Cal. 1, 9 [210 P. 269] [under prior law, where certain presumptions were treated as evidence, that evidence was dispelled by a party's admission that the facts necessary to the presumption did not exist].) Combined with our holding that section 6310 applies to such a preemptive termination, it is proper to reverse and order the entry of a new and different judgment in favor of the Commissioner. (Civ. Code, § 43; *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1459, fn. 7 [66 Cal.Rptr.2d 518]; *Sullivan v. Johnson* (1931) 116 Cal.App. 591, 595 [3 P.2d 72] [because all of the facts necessary to entitle appellant to judgment are admitted, retrial upon reversal is unnecessary].) Because Dianella is entitled to recover her damages, such as any lost wages and benefits (§ 6310, subd. (b)), and because that issue was never reached below, the matter should be remanded for the sole purpose of making a factual determination on that issue.

3. *Judgment Was Properly Entered on the Preemptive Termination Theory*

Minagar contends that judgment for Dianella would be improper because the Commissioner's pleadings tracked only the language of section 6310, which refers to employees who actually make workplace safety complaints. According to Minagar, such a judgment is not allowed for four reasons: (1) the Commissioner raises the issues for the first time on appeal; (2) citing Code of Civil Procedure section 471, there is a material variance between pleading and proof; (3) because the Commissioner failed to plead the true basis for his claims, a demurrer for failure to state a cause of action may be made for the first time on appeal; and (4) a judgment on those grounds would be without due process. As set forth below, none is well taken.

Incorporated into the Commissioner's complaint was a copy of the administrative decision which found that Minagar retaliated against Dianella after a workplace safety complaint had been made, along with a finding that it did not matter whether Dianella herself made that complaint. The Commissioner's opening trial brief contended that section 6310 should not be strictly construed and could apply to a retaliatory discharge against an employee mistakenly believed to have made a complaint. Therefore, when the trial began, it was known that the Commissioner would argue for an extension of section 6310 to circumstances outside its literal language. Evidence came in without objection that Minagar might have fired Dianella either because Minagar mistakenly believed Dianella had made the complaint, or because Dianella was Grana's friend. After this evidence came in, Minagar testified and made her admission about her true reason for firing

Dianella. During the postevidentiary hearing on Minagar's jurisdictional motion, the Commissioner contended that all of this evidence supported an extension of section 6310 on several grounds, including evidence that Minagar fired Dianella to prevent her from making her own complaint. Minagar's lawyer argued against each such ground, but never objected that these legal theories or their supporting evidence fell outside the scope of the pleadings or were otherwise being improperly raised for the first time. In fact, Minagar's lawyer told the court that she had researched some of those issues that morning and proceeded to address them on the merits. The court specifically asked about the preemptive termination issue, again prompting discussion on the merits, but no objection to the issue itself. On this record, it is clear that the issue was raised at trial, not for the first time on appeal. Because the issue upon which we grant judgment was raised below without objection, because the case was tried on that theory, and because it was based on evidence peculiarly within Minagar's knowledge that she did not produce until trial, there was no improper variance between pleading and proof. (*Stienback v. Halsey* (1953) 115 Cal.App.2d 213, 220 [251 P.2d 1008]; *Lompoc Produce & Real Estate Co. v. Browne* (1919) 41 Cal.App. 607, 612–613 [183 P. 166]; *Darcy v. H. E. Murray Co.* (1955) 133 Cal.App.2d Supp. 795, 796 [284 P.2d 583].) Assuming for discussion's sake that any constitutional due process violation occurred, a proposition we strongly doubt, Minagar waived the issue by failing to raise it below. (*Geftakys v. State Personnel Board* (1982) 138 Cal.App.3d 844, 864 [188 Cal.Rptr. 305].) Finally, Minagar cites *Parker v. Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6], for the proposition that she may demur for the first time on appeal to the Commissioner's supposed failure to state a cause of action. That decision applies only to issues of standing, however, and is therefore inapplicable.

4. *Substantial Evidence Supports a Finding that Dianella Was an Employee*

 Minagar contended at trial that Dianella was an independent contractor, not her employee, and therefore outside the scope of section 6310. (See §§ 6303, subd. (a), 6307 [Cal-OSHA applies to places of employment].) The trial court found that Dianella was an employee, but found for Minagar on the jurisdictional issue. Should all else fail, she asks us to affirm on the basis that the trial court erred in making that finding. There is a rebuttable presumption that one who furnishes services for an employer is an employee. (§ 3357.) The determination of one's status as employee or independent contractor is one of fact if dependent on the resolution of disputed evidence or inferences, and we will affirm the trial court's finding if it is supported by substantial evidence. (*Fireman's Fund Ins. Co. v. Davis* (1995) 37 Cal.App.4th 1432, 1442 [44 Cal.Rptr.2d 546].) The principal test is whether the person to whom

service is rendered has the right to control the manner and means of accomplishing the desired results. That factor can be outweighed by others, however, including: the right to discharge at will; whether the person performing services is engaged in a distinct occupation; the skill required in the occupation; whether the principal or the worker supplies the required tools, equipment and place of work; the length of time for which the services are to be performed; whether payment is by the job or based on time; whether or not the work is part of the principal's regular business; and whether the parties believe they are creating an employer-employee relationship. (*Ibid.*)

Dianella testified that: she had worked at the salon for one year; Minagar made up her work schedule; she was paid weekly, based on a percentage of the money received for her services and product sales; she was given a workstation and paid no rent for it; she did not pay for any of the beauty supplies she used; all appointments were booked through the salon's front desk; the customers paid the salon, not her; and she was required to use and pay the salon's shampoo girl. It is also beyond dispute that Dianella's services as a hair stylist were a regular part of Minagar's business. Although there were some conflicts in the evidence, such as Dianella's receipt of a 1099 form instead of a W-2, we believe this evidence was more than enough to support a finding that Dianella was Minagar's employee, not an independent contractor.

### 5. *Other Grounds for Firing Dianella Are Inapplicable*

Minagar and other salon employees testified to numerous deficiencies in Dianella's job performance, evidence that Minagar contends justified her decision to fire Dianella and compels us to affirm the judgment. Her contention is fatally flawed. The trial court found that Dianella was fired in retaliation for the workplace safety complaint, thereby rejecting Minagar's evidence. Minagar does not address the effect of that finding, or the court's right to disregard Minagar's evidence. We therefore deem the issue waived. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)

### DISPOSITION

For the reasons set forth above, the judgment is reversed. The matter is remanded to the trial court with directions to hold a hearing concerning

Dianella's damages, if any, under section 6310, subdivision (b), then enter a new and different judgment for the Commissioner. Appellant to recover its costs on appeal.

Cooper, P. J., and Boland, J., concurred.

A petition for a rehearing was denied January 4, 2005, and respondent's petition for review by the Supreme Court was denied March 30, 2005.