Filed 10/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SCOTT ROPE, | B242003 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC467045) |
| v. | |
| AUTO-CHLOR SYSTEM OF WASHINGTON, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed in part and reversed in part with directions.

Kesluk & Silverstein, Douglas N. Silverstein and Lauren J. Morrison, for Plaintiff and Appellant.

Horowitz & Clayton, Craig A. Horowitz and Wayne D. Clayton for Defendant and Respondent.

_____

When he was hired in September 2010, plaintiff Scott Rope informed his employer, defendant Auto-Chlor System of Washington, Inc. (Auto-Chlor) he planned in February 2011 to donate a kidney to his physically disabled sister, and requested that he be given leave to do so. Rope later requested that the leave be extended and paid under the then-newly enacted Michelle Maykin Memorial Donation Protection Act (DPA), Labor Code sections 1508–1513, which would become effective January 1, 2011. Rope was fired two days before the DPA became effective. He sued his former employer for violation of the DPA and other provisions of the Labor Code, violation of the Fair Employment and Housing Act, Government Code section 12940 et seq. (FEHA), and wrongful termination in violation of public policy.

Rope appeals from the judgment of dismissal entered after the trial court sustained general demurrers to his first and second amended complaints without leave to amend. (Code Civ. Proc., § 430.10, subd. (e).) We conclude that Rope has pleaded facts sufficient to support a claim for association-based disability discrimination and failure to maintain a discrimination free workplace in violation of FEHA, and a common law claim for wrongful termination in violation of public policy. We also conclude that the trial court properly sustained without leave to amend demurrers to Rope's claims for violations of the DPA, violations of the Labor Code, and for direct or perceived disability discrimination under FEHA. Accordingly, we affirm in part and reverse in part the judgment of dismissal and remand for further proceedings.

## FACTUAL ALLEGATIONS

Our factual recitation is drawn from the allegations in Rope's first and second amended complaints. For purposes of review, we assume the truth of all allegations.

On September 7, 2010, Rope was hired by Auto-Chlor as a branch manager. At the time he was hired Rope informed Auto-Chlor that he was scheduled to be an organ donor in February 2011 for his sister who had suffered kidney failure and required a kidney transplant.

From October through December 2010, Rope informed Auto-Chlor's human resources department and managers that he would need to take leave to recover after he donated a kidney to his sister. During his employment, Auto-Chlor was aware Rope's plan to donate a kidney

2

remained unchanged because Rope attended regular doctor's visits during lunch breaks to monitor his blood pressure and general health in preparation for the donation.

In November 2010, Rope became aware that the DPA would go into effect on January 1, 2011. Under the DPA, certain private sector employees are entitled to 30 days of paid leave for organ donation.[1] Rope requested 30 days paid leave for the organ donation he planned to make in February 2011, as his doctor had informed him he would likely need that amount of time to recover from the planned major surgery and organ loss.

Rope spoke with Auto-Chlor's regional manager Michael Pruss, and requested that he be permitted to take 30 days of paid leave for the organ donation, and explained the leave was a medical necessity in order for him to recover from surgery. Rope explained to Pruss that the DPA provided for the 30 days paid leave he required. Pruss promised to "look into it." Rope repeatedly requested that Auto-Chlor respond to his request for 30 days paid DPA leave; his requests were ignored. Rope complained to Auto-Chlor's management that he had a statutory right to take paid leave which no one had approved.

Rope also informed Auto-Chlor that, depending on how well the surgery and recovery went, he might need additional accommodations upon his return including more leave, and promised to inform Auto-Chlor once his doctor decided what additional accommodations, if any, he required. In November 2010, Auto-Chlor's Human Resources department told Rope he could take an unspecified amount of unpaid leave. Auto-Chlor did not respond to Rope's requests for paid leave.

From September to December 2010, Rope received satisfactory performance reviews and posed no disciplinary problems. On December 30, 2010, two days before the DPA became effective, Rope's employment was terminated purportedly for poor performance. Rope claims the real reason he was fired was Auto-Chlor's desire to avoid providing him paid leave or to accommodate his anticipated work restrictions. Auto-Chlor knew Rope was associated with his sister, a person with a physical disability and also perceived Rope as a

---

[1] Previously, such leave was available only for some public employees.

person with a disability because he would need time off work to recover from the transplant operation and would thereafter return to work with restrictions. Rope donated a kidney to his sister as planned in February 2011.

## PROCEDURAL HISTORY

In August 2011, Rope initiated this action alleging various Labor Code violations and wrongful termination in violation of public policy. Auto-Chlor demurred. Rope filed a first amended complaint (FAC) in lieu of an opposition to Auto-Chlor's demurrer.

The FAC alleged causes of action for: (1) violation of the DPA; (2) retaliation for Rope's participation in a protected activity in violation of Labor Code section 1102.5 (section 1102.5); (3) wrongful termination in violation of public policy; (4) violation of the Private Attorneys General Act of 2004 (PAGA), Labor Code section 2699 et seq.; (5) associational discrimination in violation of FEHA, Government Code sections 12940, subdivision (a), 12926, subdivision (m) [now (n)]; (6) failure to maintain a discrimination free environment in violation of FEHA, Government Code section 12940, subdivision (k); and (7) retaliation in violation of FEHA, Government Code section 12940, subdivision (h).

Auto-Chlor filed a general demurrer to the FAC. The trial court sustained with leave to amend Auto-Chlor's demurrer to the causes of action for wrongful termination in violation of public policy, and FEHA claims for associational discrimination and failure to maintain an environment free of discrimination (the third, fifth and sixth causes of action respectively). The court sustained the demurrer without leave to amend as to the causes of action for violation of the DPA, retaliation for participation in a protected activity, violation of PAGA and retaliation in violation of FEHA (the first, second, fourth and seventh causes of action).

In December 2011, Rope filed the operative second amended complaint (SAC) alleging causes of action for: (1) wrongful termination in violation of public policy; (2) associational discrimination in violation of FEHA; (3) discrimination on the basis of physical disability and perceived disability in violation of FEHA; and (4) failure to maintain an environment free of discrimination in violation of FEHA.

4

Auto-Chlor demurred again.  The trial court sustained the demurrer to the SAC without leave to amend and dismissed the action.  Rope appeals.

**DISCUSSION**

Rope contends the trial court erred when it sustained without leave to amend Auto-Chlor's demurrer as to four claims in the FAC, and erred again in sustaining without leave to amend Auto-Chlor's demurrer to the SAC in its entirety.  Rope is partially correct.

1.    *Legal standard*

A general demurrer challenges the legal sufficiency of the complaint on the ground it fails to state facts sufficient to constitute a cause of action.  (Code Civ. Proc., § 430.10, subd. (e); *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42–43.)  In reviewing a general demurrer, the facts pleaded are assumed to be true and the only issue is whether they are legally sufficient to state a cause of action.  "[W]e are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is . . . sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  Whether a complaint states facts sufficient to constitute a cause of action is a question of law.  (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.)

2.    *The trial court did not err in sustaining Auto-Chlor's demurrer to the first, second and fourth causes of action in the FAC.*

a.    *Allegations*

In the FAC Rope alleged that he was terminated (1) for the pretextual reason of "poor performance" because Auto-Chlor did not want to pay him for leave taken under the DPA,

5

(2) as retaliation for engaging in the protected conduct of requesting paid leave, and (3) for complaining after Auto-Chlor refused to approve DPA leave.

> b.    *Rope failed to state a cause of action under the DPA.*

> i.    *Retroactivity*

The DPA requires private employers with 15 or more employees to grant "[a] leave of absence not exceeding 30 days to an employee who is an organ donor in any one-year period, for the purpose of donating his organ to another person." (Former Lab. Code, § 1510, subd. (a)(1), § 1509.)[2] An employer is forbidden to interfere with, discharge or otherwise discriminate against an employee for taking such leave or for opposing a practice made unlawful under the DPA. (Lab. Code, § 1512, subds. (a), (b)(1)–(2).) Aggrieved employees may bring civil actions to enforce their rights under the DPA. (Lab. Code, § 1513.) The DPA is similar to several statutes enacted in 2002 that gave *public* employees equivalent rights and protections. (See Ed. Code, §§ 89519.5, subd. (a)(1) (Cal. State Univ. employees), 92611.5, subd. (a)(1) (Univ. of Cal. Employees); Gov. Code, § 19991.11, subd. (a)(1) (state employees).)

The principal issue is whether the trial court erred in dismissing various causes of action because Rope's allegedly discriminatory or wrongful termination occurred two days before the DPA became effective.

"New statutes are presumed to operate only prospectively absent some clear indication that the Legislature intended otherwise." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 936 (*Elsner*).) "'[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . . . For that reason, the "principle that the

---

[2] The DPA was amended in 2011 to provide that the 30 leave days be measured in business, not calendar, days and in other respects not relevant here. (Lab. Code, § 1510, subd. (a)(1); Stats. 2011, ch. 147, § 1.)

6

legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" [Citations.] (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475 (*McClung*).)

"Departure from the presumption of prospectivity is warranted only by clear legislative intent." (*City of San Jose v. International Assn. of Firefighters, Local 230* (2009) 178 Cal.App.4th 408, 420; *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 229–230.) "[I]n the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209 (*Evangelatos*).) To overcome the strong presumption against retroactivity, the Legislature must show "clear and unavoidable intent to have the statute retroactively impose liability for actions not subject to liability when taken. 'Requiring clear intent assures that [the legislative body] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits.' [Citation.]" (*McClung*, *supra*, 34 Cal.4th at p. 476.)

In contrast, a statutory amendment that merely clarifies, rather than changes, existing law is deemed not to operate retrospectively, even if applied to actions that predate its enactment, "'because the true meaning of the statute remains the same.' [Citation.] In that event, personal liability would have existed at the time of the actions, and the amendment would not have changed anything. But if the amendment changed the law and imposed personal liability for earlier actions, the question of retroactivity arises." (*McClung*, *supra*, 34 Cal.4th at pp. 471–472.)

ii.     Analysis

The 2010 enactment of the DPA substantively changed, rather than merely clarified, prior law. The DPA changed the legal consequences of a private employer's actions that were exempt from liability prior to the act's effective date. Before January 2011, no private employer was required to approve an employee's request for paid time off in order to make an organ donation. After January 2011 the standard for the imposition of liability changed.

7

Retroactive application of the DPA impermissibly would impose liability for an action that was lawful when taken. Our research revealed no indication that the Legislature intended the DPA to be construed as a clarification rather than a change in the law. Nor has Rope made any showing that the Legislature considered, let alone that it clearly and unequivocally intended by the DPA to impose after-the-fact liability.[3] (See *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1141.)

In the FAC Rope alleged that Auto-Chlor violated the DPA "[b]y failing to approve [Rope] taking paid leave pursuant to [that Act], and terminating [Rope] for attempting to exercise his rights." He alleged that his "termination violated . . . California's fundamental public policies in favor of the right to object to and refuse to participate in instructions by [Auto-Chlor] to violate California and Federal law," and that these "adverse employment actions were taken in part or in whole because of [Rope's] objections and opposition to, resistance of [Auto-Chlor's] actions, as well as [Rope's] efforts to exercise their [sic] rights under the [DPA]." Rope conceded that the DPA was not in effect during his employment with Auto-Chlor.

The trial court found that Rope had failed—and could not amend—to allege facts to state a viable claim under the DPA, a statute not in existence at the time of his termination. That determination was correct. As discussed above, the DPA's proscription against an adverse employment action, may not be applied retroactively unless the statute contains express language of retroactivity, or if another source provides a clear and unavoidable implication that the Legislature intended retroactive application. (*Evangelatos*, *supra*, 44 Cal.3d at p. 1209.) There is no language in the DPA or its legislative history reflecting any intent to apply the new statute to conduct occurring before its effective date. Absent language showing an intent for retroactive application, we presume the Legislature intended the DPA to

---

[3] By contrast, the Legislature expressly stated that 2011 amendments to the DPA did "not constitute a change in, but [were] declaratory of, existing law." (See Stats. 2011, ch. 147, § 2.)

apply prospectively only. Prior to January 2011, no statute or case law notified Auto-Chlor it would be responsible for providing a month's paid leave to any employee. In the absence of notice by prior authority, applying the DPA to conduct preceding its effective date would be tantamount to an unfair change in "'the rules of the game'" in the midst of a contest. (*Evangelatos*, *supra*, 33 Cal.3d at p. 1194.) It would be unfair to modify "a legal doctrine on which many persons may have reasonably relied in conducting their legal affairs prior to the new enactment." (*Ibid.*)

Recognizing that the DPA cannot be applied retroactively, Rope argues that February 2011, the date of his requested leave, should be considered the operative date rather than the date of his termination because public policy in California has supported paid employment leave for organ donors since 2002. But, until enactment of the DPA, public policy required paid leave only in the case of specific public employers. Auto-Chlor was entitled to rely on that limitation. To find otherwise would unreasonably and retrospectively require a defendant to comply with requirements from which it was exempt. (See *Elsner*, *supra*, 34 Cal.4th at pp. 926–927; *Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472, 1480.)[4]

### c. Rope failed to state a Labor Code violation

### i. Labor Code Section 1102.5

Labor Code section 1102.5, a whistleblower statute, prohibits an employer from adopting a policy to prevent an employee from divulging to a government or law enforcement agency information the employee reasonably believes discloses a violation of a state or federal law, retaliating against an employee who reveals such information to a governmental agency,

---

[4] Rope also argues the viability of his DPA claim should be assessed against the backdrop of the public policy prohibiting employer interference with protected unpaid leave under the federal Family and Medical Leave Act (FMLA) and California Family Rights Act (CFRA). That assertion fails. Just as the DPA did not apply to his employment circumstances, Rope was ineligible for leave under the FMLA or CFRA. Generally, both acts require an employee requesting leave to have worked for the employer for at least 12 months, and permit leave only to care for a child, parent or spouse with a serious health condition. (See 29 U.S.C. § 2611(2)(A); Gov. Code, § 12945.2, subds. (a), (c)(3).)

or from retaliating against an employee who refuses to engage in conduct that would result in a violation of a statute. (Lab. Code, § 1102.5, subds. (a)–(c).)

Rope has not pleaded and cannot plead a viable whistleblower claim because he does not claim either that he reported his suspicions of unlawful activity to any governmental agency, or that he refused to violate the law. Rather, he alleged only that he complained to Auto-Chlor itself about its foot-dragging and failure to approve his leave. Such an internal complaint does not trigger whistleblower protection under Labor Code section 1102.5. (*Green v. Ralee Engineering Co.* (1988) 19 Cal.4th 66, 77 [§ 1102.5, subd. (b) "does not protect plaintiff, who reported his suspicions directly to his employer"].)

We also reject Rope's assertion that liability under Labor Code section 1102.5 should be expanded to include Auto-Chlor's liability for "*anticipatory*" or "preemptive" retaliation because Rope might have been inclined to file a complaint with a state or federal agency.

Rope's reliance on *Lujan v. Minager* (2004) 124 Cal.App.4th 1040, is misplaced. *Lujan* permitted a preemptive retaliation claim under Labor Code section 6310[5] to proceed based on an employer's admission that it fired plaintiff for fear she would report a workplace safety violation. (*Lujan*, at p. 1045.) Some statutes related to, for example, workplace safety provide broad whistleblower protection that may encompass a complaint to one's employer. (See, e.g., *ibid.*; *Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1255 (*Steele*) [applying *Lujan* to preemptive retaliation claim under FEHA].) But Labor Code section 1102.5, subdivision (b) lacks the broad statutory language found sufficient in *Lujan* and *Steele* on which to predicate a preemptive retaliation claim based on internal complaints. By its terms Labor Code section 1102.5 provides limited protection only for disclosures "to a government or law enforcement agency." Further, both *Lujan* and *Steele* involved employees

---

[5] Labor Code section 6310, subdivision (b) grants reinstatement and reimbursement to "[a]ny employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to . . . his or her employer . . . of unsafe working conditions, or work practices."

10

fired for fear they would file complaints about their employers' violation of statutes *already in effect*. Not so here. Rope has not alleged nor professed that he can allege that Auto-Chlor suspected he would file a governmental complaint, and fails to identify any authority applying a preemptive retaliation claim to Labor Code section 1102.5. This limitation supports holding Rope to the statute's parameters.

### ii. Labor Code section 98.6

Labor Code section 98.6 provides, among other things, that no employer shall discharge or discriminate against any employee because he engaged in conduct protected under the Labor Code. Rope's opening brief contains no argument regarding Auto-Chlor's alleged violation of this statute.[6] Rope has forfeited this argument. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779,784–785 [failure to support a point with reasoned argument and citations to relevant authority, constitutes waiver].) Further, Rope has not alleged, and does not claim he can amend to allege, that he engaged in any conduct protected under Labor Code section 1102.5 or the DPA. As such, he also failed to state facts sufficient to support a claim for violation of Labor Code section 98.6. (See *Grinzi v. San Diego Hospice Corp*. (2004) 120 Cal.App.4th 72, 87 [Lab. Code, § 98.6 only "prohibit[s] termination for conduct 'otherwise protected by the Labor Code'"].)

### iii. The Private Attorneys General Act

In PAGA, the Legislature created an enforcement mechanism for aggrieved employees to file representative actions to recover penalties in cases in which there is no private cause of action as an alternative to enforcement by the Labor Commissioner. (See Lab. Code, § 2699, subd. (g)(1); *Franco v. Athens Disposal Co., Inc*. (2009) 171 Cal.App.4th 1277, 1300–1302; *Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 337.) In the FAC, Rope alleged

---

[6] Rope belatedly raises the issue in a footnote in his reply asserting, without authority or discussion, that Labor Code sections 98.6 and 1102.5 are "analogous statutes." But, in the absence of a reasonable explanation for failing to present it earlier, an argument raised first time in a reply brief will not be considered. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.)

violations of Labor Code sections 98.6, 1102.5 and 1512, all predicated on Auto-Chlor's failure to provide him alone paid leave for an anticipated organ donation under a statute not in effect during his employment.

The trial court sustained Auto-Chlor's demurrer to Rope's PAGA cause of action without leave to amend on the ground that it is dependent on pleading Labor Code violations and the FAC failed to do so because the alleged violations about which Rope complained fell within the not-yet-effective DPA. With no substantive legal argument or citation to authority, Rope maintains that the trial court erred in sustaining the demurrer to his PAGA claim because "any of [his] Labor Code claims support the [PAGA] claim[]." That might be true if Rope had stated or could state a viable Labor Code claim. As discussed above, he has not and cannot. "Recovery of civil penalties under [PAGA] requires proof of a Labor Code violation." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 987.) Rope presented no facts to show how he might cure the defects in his PAGA claim. On the contrary, he conceded that his PAGA claim "would go away" absent a viable cause of action under the DPA.[7]

    d.    *The demurrer was properly sustained as to the retaliation claim*

Rope alleged he suffered retaliation for engaging in the FEHA "protected activities of requesting leave for his sister's disability/medical condition."[8] In relevant part, FEHA provides that it is unlawful "[f]or any employer . . . to discharge . . . or otherwise discriminate

---

[7] The PAGA claim also fails for another reason. Suits brought under PAGA must be representative actions. (See Lab. Code, § 2699, subd. (g)(1) [plaintiff must sue "on behalf of himself . . . and other current or former employees" injured by employer's violations].) Rope does not claim he serves as a representative for one or more current or former employees either denied leave under the DPA, or have complained about violations of that statute. PAGA requires that the representative plaintiff establish that the employer have committed the Labor Code violations for which recovery is sought against the aggrieved employees. At least one violation must have been committed against the representative plaintiff. (Lab. Code, § 2699, subds. (a) & (c); see also *Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 987.)

[8] Rope also alleged he was retaliated against for engaging in activities protected by the DPA, and Labor Code sections 1102.5 and 98.6. These allegations cannot survive absent a viable underlying Labor Code claim.

12

against any person because the person has opposed any practices forbidden under this part . . . ." (Gov. Code, § 12940, subd. (h).)[9]  To state a claim of retaliation under FEHA, a plaintiff must show:  (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); § 12940, subd. (h).)  The question here is whether Rope's request for paid leave as an accommodation qualifies as a "protected activity" within the meaning of section 12940, subdivision (h).  Auto-Chlor argues it does not because Rope does not claim to have "'oppose[d] any conduct forbidden'" by FEHA.  We agree.

Protected conduct under section 12940, subdivision (h) may take many forms.  The statute "makes it an unlawful employment practice '[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has *opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part*.'"  (*Yanowitz, supra*, 36 Cal.4th at p. 1042.)

FEHA's implementing regulations help clarify what constitutes protected activity. They state:  "(a)(1) Opposition to practices prohibited by [FEHA] includes, . . . :  [¶] (A) Seeking the advice of the Department [Department of Fair Employment and Housing] or Commission [Fair Employment and Housing Commission], . . . ;  [¶]  (B) Assisting or advising any person in seeking the advice of the Department or Commission, . . . ;  [¶]  (C) Opposing employment practices which an individual reasonably believes to exist and believes to be a violation of the Act;  [¶]  (D) Participating in an activity which is perceived by the employer or other covered entity as opposition to discrimination, whether or not so intended by the individual expressing the opposition; or  [¶]  (E) Contacting, communicating with or participating in the proceeding of a local human rights or civil rights agency regarding employment discrimination on a basis enumerated in the Act.  [¶]  (2) Assistance with or

---

[9] All further statutory references are to the Government Code unless otherwise indicated.

participation in the proceedings of the Commission or Department includes, but is not limited to: [¶] (A) Contacting, communicating with or participating in the proceedings of the Department or Commission due to a good faith belief that the Act has been violated; or [¶] (B) Involvement as a potential witness which an employer or other covered entity perceives as participation in an activity of the Department or the Commission." (Cal. Code Regs., tit. 2, § 7287.8, subd. (a).)

Clearly, section 12940, subdivision (h) encompasses a broad range of protected activity. An employee need not use specific legal terms or buzzwords in opposing discrimination. (*Yanowitz*, *supra*, 36 Cal.4th at pp. 1046–1048.)[10] Nor is it necessary for an employee to file a formal charge. (*Ibid*.) The protected activity element may be established by evidence that the plaintiff threatened to file a discrimination charge (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 814–815), by a showing that the plaintiff mistakenly, but reasonably and sincerely believed he was opposing discrimination (*Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 477), or by evidence an employer believed the plaintiff was a potential witness in another employee's DFEH action (*Steele*, *supra*, 162 Cal.App.4th at p. 1252.) The determination as to what constitutes a protected activity is inherently fact-driven.

Nevertheless, we find no support in the regulations or case law for the proposition that a mere request—or even repeated requests—for an accommodation, without more, constitutes a protected activity sufficient to support a claim for retaliation in violation of FEHA. On the contrary, case law and FEHA's implementing regulations are uniformly premised on the principle that the nature of activities protected by subdivision (h) demonstrate some degree of

---

[10] *Yanowitz*, *supra*, 36 Cal.4th 1028 found that the plaintiff engaged in protected activity by refusing to implement her supervisor's orders to fire a sales associate whom the supervisor found insufficiently attractive. The plaintiff never explicitly told her supervisor she believed his orders were discriminatory, but the California Supreme Court found that her repeated requests for a justification to fire the sales associate that was not based on the woman's physical appearance adequately conveyed plaintiff's belief the supervisor's order was not lawful. (*Id*. at p. 1045.)

opposition to or protest of the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice is unlawful. (See Cal. Code. Regs., tit. 2, § 7287.8; *Gardner v. City of Berkeley* (N.D. Cal. 2012) 838 F.Supp.2d 910, 925 [mere "act of receiving a medical retirement is not a 'protected activity'" under FEHA].)

Further, to constitute retaliation, there must also be evidence the employer knew the employee was engaged in activities in opposition to the employer at the time of the alleged retaliation. (See e.g., *Yanowitz*, *supra*, 36 Cal.4th at p. 1046 [employee's unarticulated belief that an employer is engaging in discrimination is insufficient to establish protected conduct if there is no evidence employer knew employee's opposition was based upon a reasonable belief that employer was engaging in discrimination].) Rope has not alleged, and does not purport to be able to amend to allege, facts sufficient to satisfy this test.

Rope claims also to have sufficiently pleaded protected activity simply by complaining to Auto-Chlor about its failure to respond to his leave requests. These complaints are insufficient to show Rope "opposed practices" forbidden by FEHA and suffered retaliation as a result. "The interpretation of 'protected activity' that [Rope] urges would significantly blur and perhaps obliterate the distinction between an action for failure to accommodate or engage in the interactive process and retaliation." (*Kelley v. Corrections Corp. of America* (E.D.Cal 2010) 750 F.Supp.2d 1132, 1144 [interpreting FEHA].)

Rope asserts that retaliation may be inferred from the timing of his requests for leave and Auto-Chlor's refusal to discuss the matter, in relation to the DPA's impending effective date. He is correct that in some cases, a close temporal proximity between an employee's resistance or opposition to unlawful conduct and an adverse employment action will support an inference that the action was retaliatory. (See *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1110, fn. 6; *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1235, disapproved on another ground by *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173–1174; *Villiarimo v. Aloha Island Air, Inc.* (9th Cir. 2002) 281 F.3d 1054, 1065.) But, "a close temporal relationship does not change the nature of the employee's activity in the first instance. The text of [section 12940

15

s]ubdivision (h) restricts its application to adverse employment actions taken in response to employee *opposition* to employer actions or policies or to employee participation in *proceedings* directed against the employer that are in opposition to rights guaranteed by FEHA." (*Kelley v. Corrections Corp. of America*, *supra*, 750 F.Supp.2d at p. 1144.) Neither category encompasses Rope's requests, or complaints to Auto-Chlor management about the company's failure to grant paid DPA leave.[11]

3.     *The SAC adequately states FEHA causes of action for associational discrimination and failure to maintain an environment free from discrimination, and a common law claim for wrongful termination in violation of public policy.*

      a.     *Amendments to the pleading*

      The trial court granted Rope leave to amend the FAC as to three causes of action: wrongful termination in violation of public policy, associational discrimination and failure to maintain a workplace environment free from discrimination. Rope amended these claims and added a new cause of action for discrimination on the basis of actual or perceived disability under FEHA. The court sustained the demurrer to all four causes of action without leave to amend. Auto-Chlor argues the demurrer to the SAC was properly sustained because, among other reasons, Rope failed to obtain leave to add a new FEHA claim, and did not exhaust his administrative remedies as to such a claim. We reject these arguments.

      Generally, when a court sustains a demurrer with leave, the pleader may amend only the cause of action as to which the demurrer was sustained. (*Patrick v. Alacer Corp.* (2008)

_____

[11] We also reject Rope's assertion that he stated a claim of "preemptive retaliation" under *Steele*, *supra*, 162 Cal.App.4th 1241. There the court held that constructive discharge could qualify as an adverse employment action sufficient to support a retaliation claim under FEHA. (*Id*. at p. 1253.) But even under *Steele*, an employer must believe the employee is or will be engaging in protected activity as a prospective complainant or witness for a complainant. Rope does not allege nor claim to be able to amend to allege that he engaged in, or that Auto-Chlor feared he would engage in, such protected activity. Section 12940, subdivision (h) applies to adverse employment actions taken in response to employee *opposition* to employer actions or policies or to employee participation in proceedings against the employer that are in opposition to rights guaranteed by FEHA.

167 Cal.App.4th 995, 1015.) But the general rule does not apply if the new cause of action responds to the court's reasoning for sustaining the earlier demurrer. (*Ibid.*) Further, it is error for the trial court to sustain a demurrer if the plaintiff has stated or can state a cause of action under any possible legal theory. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) In his opposition to the demurrer to the FAC, Rope requested leave to amend the FAC to allege new disability discrimination and perceived disability claims. This issue was also discussed at the hearing on the demurrer. The newly pleaded causes of action respond to the trial court's concerns in that they provide a statutory predicate for the allegation that Auto-Chlor's failure to grant leave was unlawful disability-based discrimination.

As for the assertion that Rope failed to exhaust his administrative remedies, in his amended Department of Fair Employment and Housing (DFEH) form complaint, Rope "checked" boxes for termination, denial of accommodation, failure to prevent discrimination, retaliation, disability discrimination and association discrimination. The DFEH complaint also alleges that Rope "was discriminated against . . . on account of his association with his sister, who suffered from the [physical disability of kidney failure]," and that he was wrongfully fired "in retaliation for requesting [medical] leave to donate an organ to his sister."

Auto-Chlor argues Rope failed to exhaust his DFEH remedies because the body of the administrative complaint does not specifically state that Rope claimed disability or perceived disability discrimination. But the administrative complaint does state that Rope planned to donate an organ to his disabled sister, which is the factual basis of his FEHA claim. Further, we view Rope's newly pleaded FEHA claims as sufficiently "like or reasonably related" to his other charges to find that Auto-Chlor had notice of Rope's FEHA claim, and that he exhausted his administrative remedies. (See *Okoli v. Lockheed Technical Operations, Co*. (1995) 36 Cal.App.4th 1607, 1615 [FEHA action may include claim that is "'like or reasonably related'" to the allegations in plaintiff's DFEH charge of discrimination].) If an employer has been put on notice of charges, a technically incomplete DFEH complaint will not preclude an action to pursue those claims. (See *Cole v. Antelope Valley Union High School Dist*. (1996) 47 Cal.App.4th 1505, 1511.)

*b.      Associational, direct and perceived disability discrimination*

Rope alleged in his second and third causes of action that Auto-Chlor discriminated against him based on his relationship or association with his physically disabled sister, and its perception that he was or would become physically disabled himself as a result of the kidney donation surgery and his anticipated need for postsurgical accommodations. We find that Rope has stated a claim for associational discrimination under FEHA, but reject his other contentions.

*i.      Associational discrimination*

FEHA provides in pertinent part that it is unlawful for "an employer, because of the . . . physical disability . . . of any person, to . . . discharge the person from employment . . . , or to discriminate against the person . . . in terms, conditions, or privileges of employment." (§ 12940, subd. (a).) Elsewhere the statute makes clear that its prohibition against discrimination on the basis of physical disability "includes a perception that the person has any of those characteristics or that the person is *associated with a person who has*, or is perceived to have, any of those characteristics." (§ 12926, subd. (n), italics added.) The pivotal purposes of the statute are to prevent, eliminate and remedy workplace discrimination. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 223 (*Harris*); §§ 12920, 12920.5.) FEHA must be liberally construed to promote and accomplish its purposes. (§§ 12603, 12993; *Harris*, at p. 223.)

To state a FEHA claim, a plaintiff need only "show that: he or she was a member of a protected class; was qualified for the position he sought; suffered an adverse employment action, and there were circumstances suggesting that the employer acted with a discriminatory motive." (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1379.) Litigation of disability discrimination in the employment context proceeds in three stages. First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff meets this burden, the employer must offer a legitimate, nondiscriminatory reason for the adverse employment decision. Third and finally, the plaintiff bears the burden to prove the

18

employer's proffered reason is pretextual. (*Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 129.) We are concerned here only with the first analytical stage.

The issue of disability-based discrimination on the basis of a nondisabled employee's association with an individual with a disability has been the subject of very little litigation. Indeed, it has been addressed only once, tangentially, by one published California case prior to this case.[12] In such circumstances, "'[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.' [Citation.]" (*Harris*, *supra*, 56 Cal.4th at p. 218.) "[R]ecourse to federal antidiscrimination law is instructive only to the extent that its purpose and the FEHA's purposes are aligned . . . ." (*Id*. at p. 222.) "Because the ADA and FEHA share the goal of eliminating discrimination, we often look to federal case authority to guide the construction and application of FEHA . . . ." (*Gelfo*, *supra*, 140 Cal.App.4th at pp. 56–57.) Accordingly, we turn now to Judge Posner's well-reasoned decision in *Larimer v. International Business Machines Corp.* (7th Cir. 2004) 370 F.3d 698 (*Larimer*), the seminal authority on disability-based association discrimination under the ADA, and the principal case on which both parties rely.

*Larimer* delineated the parameters of a claim of associational discrimination as follows:

"Three types of situation are, we believe, within the intended scope of the rarely litigated . . . association section. We'll call them 'expense,' 'disability by association,' and 'distraction. They can be illustrated as follows: an employee is fired (or suffers some other adverse personnel action) because (1) ('expense') his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan; (2a) ('disability by association') the employee's homosexual companion is infected with HIV and the employer

---

**12** In *Knight v. Hayward Unified School Dist*., *supra*, 132 Cal.App.4th 121 the court declined to address plaintiff's claim that he suffered discrimination based on his association with his disabled spouse, based on its conclusion that an exclusion in the employer's health insurance plan for in vitro fertilization applied equally to all employees. (*Id*. at pp. 127, fn. 2, 134.)

19

fears the employee may also have become infected, through sexual contact with the companion; (2b) (another example of disability by association) one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well (maybe the relative is an identical twin); (3) ('distraction') the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours." (*Id*. at p. 700.)

We are concerned here only with the "expense" category.[13] While Rope's claim does not fit neatly within *Larimer's* narrow description of that category, *Larimer* provided an "illustrative," rather than an exhaustive, list of the kind of circumstances which might trigger a claim of associational discrimination. (*Larimer*, *supra*, 370 F.3d at p. 700.)

Moreover, and more importantly, *Larimer* was decided under the ADA, and the provisions of FEHA are broadly construed and afford employees more protection than the ADA. (See § 12926.1, subds. (a), (d) ["Although the [ADA] provides a floor of protection, this state's law has always . . . afforded additional protections"].) "[B]ecause FEHA 'provides protections independent from those in the [ADA]' and 'afford[s] additional protections than the [ADA]' [citation], state law will part ways with federal law in order to advance the legislative goal of providing greater protection to employees than the ADA. [Citation.]" (*Gelfo*, *supra*, 140 Cal.App.4th at p. 57.) Accordingly, we reject Auto-Chlor's assertion that the narrow example of a claim of "expense" associational discrimination provided in *Larimer* should govern the scope of such claims that can be brought under FEHA rather than the ADA.

---

[13] Rope's claim is not within the "disability by association" category. And while Rope argues his claim falls within the "distraction" category, any assertion that Rope was inattentive at work is belied by his allegations of exemplary workplace performance, outstanding performance reviews, and that he attended doctor's appointments only during lunch breaks.

20

In our view, Rope has pleaded minimally sufficient facts to state a prima facie "expense" association claim under FEHA  The SAC alleges that:  From October through December 2010, Rope informed his superiors at Auto-Chlor that he intended to donate a kidney to his sister and that he intended to take a leave of absence to make the organ donation in February 2011; in or about November 2010, Rope informed his superiors about the DPA and requested 30 days paid leave under the DPA, beginning in February 2011; after January 1, 2011, Rope's leave under the DPA would cause Auto-Chlor to incur certain expense; and Auto-Chlor terminated Rope's employment on the pretext of poor performance on December 30, 2010, two days before the DPA took effect.  The reasonable inference is that Auto-Chlor acted preemptively to avoid an expense stemming from Rope's association with his physically disabled sister.[14]

The facts of this case are unusual.  Rope is alleging that Auto-Chlor fired him to avoid having to incur the expense of his leave under the DPA, which was intended for the very purpose of facilitating the donation of vital organs to individuals who are indisputably physically disabled.  Rope has thus met his burden to show the adverse employment action occurred under circumstances raising a reasonable inference that the disability of his or her

_____

[14] At the time Rope was hired Auto-Chlor knew his sister was physically disabled and that Rope planned to donate a kidney to her in February 2011, and agreed to give him time off to do so.  Ordinarily, these facts would militate against a finding that Auto-Chlor later discriminated against Rope on the basis of this association.  (See e.g., *Herr v. Airborne Freight Corp.* (8th Cir. 1997) 130 F.3d 359, 363 [strong inference may be drawn that adverse employment action was not motivated by discrimination where employer knew of employee's membership in protected class at the time of hiring]; *Erdman v. Nationwide Ins. Co.* (3d Cir. 2009) 582 F.3d 500, 511 [No inference of disability discrimination where employer was aware of employee's child's disability for many years before employee was fired].)  Not so here.  Auto-Chlor agreed to give Rope some unpaid leave for the organ donation.  The circumstance Auto-Chlor initially envisioned posed a significantly different financial picture than the one that developed once the company learned it would not only lose its manager's services for at least four weeks, but that it would have to continue to pay Rope's salary throughout that time, and that his ability to resume full time work was likely to be compromised for some time thereafter.

relative or associate was a substantial factor motivating the employer's decision. (See *Harris*, *supra*, 56 Cal.4th at p. 232.) Our holding should not be interpreted as a siren song for plaintiffs who, fearing termination, endeavor to prepare spurious cases by talking up their relationship at work to a person with a disability; such relationships do not, by themselves, give rise to a claim of discrimination. (See *Dewitt v. Proctor Hosp.* (7th Cir. 2008) 517 F.3d 944, 952 conc. opn. of Posner, J.) As clarified by Judge Posner in his concurrence in *Dewitt*, to satisfy *Larimer*'s "expense" test, "an employer who discriminates against an employee because of the latter's association with a disabled person is liable even if the motivation is purely monetary. But if the disability plays no role in the employer's decision . . . then there is no *disability* discrimination." (*Id.* at p. 953; see also *Larimer*, *supra*, 370 F.3d at 700–701.)

### ii.     No actual or perceived disability under FEHA

To qualify as a member of the protected class on the basis of his contention that he adequately pleaded a claim for direct or "actual" physical disability discrimination under FEHA, Rope must demonstrate an impairment that constitutes a physical disability according to the statutory definition. (*Gelfo*, *supra*, 140 Cal.App.4th at p. 47; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256.) It is not enough merely to allege a physical disability. (*Gelfo*, at p. 47.) "'[T]he touchstone of a qualifying [physical] disability is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities.' [Citation.]" (*Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 353–354.) Rope has not established that he is himself physically disabled, and does not claim an ability to cure this fatal defect. At most, Rope alleges only that he anticipated becoming disabled for some time after the organ donation. This is insufficient. Rope cannot pursue a cause of action for discrimination under FEHA on the basis of his "actual" physical disability in the absence of factual allegations that he was in fact, physically disabled.

Nor was Rope himself perceived or treated by Auto-Chlor as having, or having had, a "physical disability" or as having, or having had, a disease, disorder, condition, or health

22

impairment that might become a "physical disability." (See § 12926, subd. (k)(4).) Auto-Chlor did not mistakenly conclude that Rope had, or previously had, a condition that made working difficult, nor did it mistakenly believe that any nonlimiting condition made it difficult for him to work. (See *Sutton v. United Air Lines, Inc*. (1999) 527 U.S. 471, 489 [119 S.Ct. 2139, 144 L.Ed.2d 450].) As far as Auto-Chlor was concerned, Rope was a nondisabled employee complaining that he would not be paid for taking more leave than it had agreed to allow him to take (unpaid). Rope does not claim a physical condition affected his ability to perform the essential functions of his position.

We say on this record that Auto-Chlor took action against Rope based on concerns or fear about his possible future disability. The relevant FEHA definition of an individual regarded as disabled applies only to those who suffer certain specified physical disabilities or those who have a condition with "no present disabling effect" but which "may become a physical disability . . . ." (Former § 12926, subd. (k)(5).) (*Jensen v. Wells Fargo Bank*, *supra*, 85 Cal.App.4th at p. 259.) According to the pleadings, Auto-Chlor fired Rope to avoid accommodating him because of his association with his physically disabled sister. That is not a basis for liability under the "regarded as" disabled standard. Rope cannot establish a prima facie case of actual or perceived disability discrimination under FEHA. (See *Arteaga v. Brink's, Inc.*(2008) 163 Cal.App.4th 327, 352.)

c. *Wrongful termination in violation of public policy*

Rope alleges that Auto-Chlor's pretextual termination was a violation of fundamental public policies reflected in FEHA and the ADA because of his relationship with a person with a disability.[15]

To establish a claim for wrongful discharge in violation of public policy, a plaintiff must plead and prove (1) a termination or other adverse employment action; (2) the

---

[15] To the extent this cause of action is predicated on Rope's assertions that he was discriminated on the basis of an actual or perceived physical disability, or that Auto-Chlor engaged in retaliation, our conclusion that the trial court properly sustained the demurrer to those claims compels the same conclusion here.

termination or other action was a violation of a fundamental public policy, as expressed in a constitutional, statutory, or regulatory provision; and (3) a nexus between the adverse action and the employee's protected status or activity. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) FEHA's policy prohibiting disability discrimination in employment is sufficiently substantial and fundamental to support a claim for wrongful termination in violation of public policy. (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1159–1161; see also § 12920 ["It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability, mental disability . . . ."]; *Flannery v. Prentice* (2001) 26 Cal.4th 572, 582–583 ["The basic, underlying purpose of FEHA is to safeguard the right of Californians to seek, obtain, and hold employment without experiencing discrimination on account of . . . disability"].)

For the reasons the trial court erred in sustaining the demurrer to the associational disability discrimination claim, it also erred in sustaining the demurrer to this claim.

     d.     *Failure to maintain a discrimination free environment*

Rope's fourth cause alleges that Auto-Chlor violated FEHA by failing to take the necessary steps to provide an environment free from discrimination. (§ 12940, subd. (k).) An actionable claim under section 12940, subdivision (k) is dependent on a viable claim for discrimination. (*Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1021.) This cause of action survives the pleading stage because Rope's FEHA claim for associational disability discrimination survives.

## DISPOSITION

That portion of the judgment dismissing the causes of action for association disability and failure to maintain a workplace free of discrimination in violation of Fair Employment and Housing Act is reversed, as is the judgment dismissing the claim for wrongful termination in violation of public policy. The matter is remanded to the trial court with directions to vacate its order sustaining Auto-Chlor System of Washington, Inc.'s demurrer without leave to amend and to enter a new and different order overruling its demurrer as to these causes of action. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


MALLANO, P. J.


ROTHSCHILD, J.