Filed 7/11/14  Corona v. Goodland Holdings CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARIA JESSIE CORONA, | B249862 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC484990) |
| GOODLAND HOLDINGS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed in part, reversed in part.

Law Office of Mark J. Leonardo and Mark J. Leonardo, for Plaintiff and Appellant.

LightGabler, Jonathan Fraser Light and Anne M. Larsen, for Defendants and Respondents.

This case illustrates problems encountered in an employment discrimination case when the defendants' arguments are more suited to summary judgment than to disposition on a motion for judgment on the pleadings (or on general demurrer). As we note below, the trial court made its own motion for judgment on the pleadings, which was then followed by defendants' motion for the same relief.

Plaintiff Maria Jessie Corona appeals from a judgment on the pleadings in her action for employment discrimination, harassment, and related torts. Plaintiff argues that she adequately pled causes of action for relief under the California Fair Employment and Housing Act (Gov. Code, § 12940 et seq.,[1] FEHA) and related torts. Alternatively, she contends her revised proposed second amended complaint remedied any pleading deficiencies of her first amended complaint, and that she should be allowed to file that pleading.

We find the allegations of the first amended complaint to be sufficient to state causes of action for discrimination on all three grounds alleged; harassment based on physical condition or disability; failure to prevent discrimination; wrongful termination in violation of public policy; and intentional infliction of emotional distress. We conclude the trial court erred in denying plaintiff an opportunity to amend her cause of action for breach of the covenant of good faith and fair dealing as she sought to in her revised proposed second amended complaint.

Defendant Kim MacKaye has demonstrated that she cannot be held personally liable for discrimination as alleged in the first and seventh causes of action for discrimination and for failure to prevent harassment and discrimination. Judgment was proper on the causes of action for harassment based on gender and national origin or ethnicity and negligent infliction of emotional distress.

---

[1] Statutory references are to the Government Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff is Hispanic. She was hired in August 2006 by Goodland Holdings, Inc. (Goodland) to work in accounts payable. She remained in that position until spring 2011. Beginning in January 2011 she also held the same position for Hungry Heart Media, Inc., (Hungry Heart) which shared the location used by Goodland. Plaintiff alleges that at all relevant times, her supervisor at Goodland was Kim MacKaye,[2] who also supervised her with respect to work for Hungry Heart. Goodland, Hungry Heart, and MacKaye are named defendants in plaintiff's action, and we refer to them collectively as "defendants."

Plaintiff's action against defendants is based on three categories of conduct: 1) denying her requests for raises when other non-Hispanic male co-workers were granted raises; 2) allowing non-Hispanic and male co-workers more liberal use of sick leave and vacation time than was afforded to plaintiff; and 3) discouraging her from using sick leave for physical conditions or disabilities. We focus on the allegations of the first amended complaint, which was the charging pleading at the time the court granted the motion for judgment on the pleadings. Plaintiff also alleged extensive misconduct by MacKaye related to financial improprieties and abuse of sick leave and vacation time by MacKaye, but does not allege a "whistle-blower" cause of action.

*A. Raises*

Plaintiff alleged that between 2009 and 2010, she asked for a raise, but was told by MacKaye that her pay would be reduced instead. At that time, plaintiff learned that MacKaye did not give herself a pay cut, although executives of Goodland were to do so because of declining business. She alleged that Hispanic co-worker Letty Shiff quit in September 2010 because she could no longer tolerate MacKaye's "harassment, nitpicking and degrading comments". According to the complaint, MacKaye told plaintiff that she had not given Shiff a raise in the four years she supervised her, and wanted to fire her but the owners would not allow her to do so. Plaintiff took over many of Shiff's former duties, but was not given a raise by MacKaye to compensate for the extra work, even

---

[2] MacKaye also was alleged to have been chief financial officer for Goodland.

3

though that was suggested by a production manager for the company. She continued to request raises thereafter, but MacKaye denied each request. Three other employees received raises during this period.

In January 2011, plaintiff told MacKaye she was going to quit to take a higher paying job. MacKaye's initial reaction was that the company could not give her a raise, so she would have to quit. Minutes later, MacKaye offered plaintiff a raise, which was later set at $75 a week. After plaintiff did not respond within three days, MacKaye withdrew the offer.

## B. Disparate Treatment and Harassment Based on Ethnicity and Gender

Plaintiff alleged that MacKaye favored a Caucasian male employee, Chris Jones, giving him special treatment including allowing him flexible hours, abuse of sick leave, loans on terms more favorable than those offered to other employees, and larger bonuses. MacKaye disregarded Jones' intoxication at work. In contrast, MacKaye did not accommodate a request by plaintiff to take sick leave to care for her child, only the second occasion in two years that she sought to take sick leave. Plaintiff alleged that MacKaye treated her more harshly than she treated Jones. She alleged that MacKaye expressed disdain for women.

Plaintiff also alleged: "Plaintiff observed that MACKAYE treated employees differently based on the employees' race. Specifically, MACKAYE, on multiple occasions, made comments to Plaintiff and Letty Shiff (who was also Hispanic), and other Hispanic employees about their Hispanic heritage in a demeaning way. On one occasion, there was food leftover on the kitchen counter and there were flies on the food and an employee that MACKAYE thought was Mexican was waiving [*sic*] the flies off the food and MACKAYE said 'you should be used to that, don't they have flies on the food in Mexico? On another occasion, MACKAYE boasted that she knew Spanish, and then said the Spanish words she knew: 'clean,' 'pick-up' and 'trash.' On another occasion several workers were going to a Mexican restaurant after work and MACKAYE asked Plaintiff to go. When Plaintiff politely declined, MACKAYE responded, 'Really, I thought that would be something you would be in to [*sic*] because they have tacos.'"

4

*C.  Disparate Treatment and Harassment Based on Disability or Physical Condition*

Plaintiff alleged that beginning in November 2010, she experienced anxiety or panic attacks.  She suffered an additional 12 attacks, all precipitated by MacKaye's conduct.  Plaintiff continued to work rather than calling in sick because she feared reprisal by MacKaye.  She also alleged she had medical issues with a thyroid condition and a heart murmur, but worked through them because she feared reprisal by MacKaye if she requested sick leave.  MacKaye told other workers that plaintiff was a hypochondriac.  Plaintiff alleged:  "Plaintiff's co-workers informed Plaintiff that on the occasions when Plaintiff did call in sick, MACKAYE would be very angry and annoyed, and would refer to Plaintiff as a hypochondriac."  On one occasion, in March 2011, MacKaye told plaintiff she could not call in sick, although plaintiff had a sinus infection, sore throat and bad cough.  When plaintiff insisted on staying home, MacKaye sent numerous text messages and voice mails to plaintiff about work issues throughout the day.  As a result, plaintiff suffered another anxiety attack.

In March 2011, plaintiff's thyroid physician recommended that she see a psychologist.  She did so.  The psychologist recommended that plaintiff remain off work for the rest of April 2011.  At the end of April, he told her she still could not work and recommended that she stay off work until June 6, 2011.  Defendants said they would not hold her job open past that date.

Plaintiff alleged that she "could not return to work thereafter because of the stress caused by Defendant MACKAYE's discriminatory conduct toward her and was constructively terminated as a result thereof."

The California Department of Fair Employment and Housing issued right to sue letters in May 2011 to plaintiff on her complaints of discrimination by each of the defendants.  In that month, plaintiff filed her original complaint in the Los Angeles Superior Court.  That complaint was not served, and was replaced by the first amended complaint filed in July 2012.  It alleged causes of action for discrimination, harassment, and failure to prevent discrimination or harassment in violation of FEHA, section 12940, subdivisions (a), (j) and (k).  Based on the same conduct, plaintiff also alleged causes of

action for wrongful termination in violation of public policy, breach of the implied covenant of good faith and fair dealing, and intentional and negligent emotional distress.

Defendants answered the first amended complaint, to which plaintiff demurred. An amended answer was filed. The court issued a minute order, sua sponte, setting a hearing on whether judgment on the pleadings was appropriate "given that the complaint in this case does not appear to state a cause of action." The court set a briefing schedule on the issue. Defendants then filed their own motion for judgment on the pleadings in support of the court's motion. Plaintiff filed her opposition on the date set by the trial court for replies to any initial briefing on the issue. Defendants filed a reply noting that it had not yet received a response from plaintiff.

The next day, plaintiff lodged a proposed second amended complaint,[3] and then a revised proposed second amended complaint. The court held a hearing on the motion for judgment on the pleadings, and took the matter under submission. The record on appeal does not include a reporter's transcript of the hearing. The court found plaintiff's opposition untimely, but apparently considered it: "even were this not the case, the existing complaint and the proffered amended complaint (offered and lodged/'received' but not filed) of this date both fail to plead a cause of action."

The court characterized plaintiff's complaint as alleging that MacKaye was cheating the company and was taking more perks than plaintiff was given. Since plaintiff did not allege a whistle-blower theory, allegations that MacKaye had cheated the other

---

[3] Defendants argue that the proposed second amended complaint is not properly before us on appeal because it was not lodged with the trial court, and therefore cannot be a part of the record on appeal. Plaintiff asserts in her reply brief, with no citation to the record, that the proposed second amended complaint was submitted to the trial court during argument on the judgment on the pleadings issue. She asserts that the court reviewed it during the hearing. Subsequently she submitted a revised proposed second amended complaint, which was lodged with the court, and which she claims the court considered. We need not resolve this issue because plaintiff does not base any argument on appeal on the proposed second amended complaint. She argues instead that the allegations of the revised proposed second amended complaint demonstrate that she could allege viable causes of action and that the court erred in denying leave to amend. We review the revised proposed second amended complaint as it bears on that issue.

defendants were not found to be a basis for an action by plaintiff. The court also concluded that plaintiff was not entitled to the same "'perks'" as MacKaye. The court found that plaintiff had failed to allege any discriminatory or harassing actions by defendants in 2011. Nor did she allege any adverse job action. As to the allegation of constructive termination, the court found that plaintiff had failed to plead that she attempted to return to work in June 2011, or that she had been told by her physician that she could not do so.

The court granted judgment on the pleadings, ruling that plaintiff had failed to allege a valid cause of action for harassment or discrimination and had "demonstrated that she cannot do so even were leave to amend to be granted." Judgment was entered in favor of defendants. Plaintiff filed a timely notice of appeal from the judgment.

## DISCUSSION

### I

"The standard of review for a motion for judgment on the pleadings is the same as that for a demurrer. [Citation.]" (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 416.) "'We review the complaint de novo to determine whether the complaint states a cause of action, as a matter of law.' [Citation.]" (*Caldera Pharmaceuticals, Inc. v. Regents of University of California* (2012) 205 Cal.App.4th 338, 350 [judgment on the pleadings].) "In conducting this review, we accept, and liberally construe, the truth of the complaint's properly pleaded factual allegations, but not contentions, deductions, or conclusions of fact or law. [Citations.] We are not concerned with [the plaintiff's] ability to prove its allegations, only whether its second amended complaint shows that it makes out a claim for some relief, even if an amount less than alleged. [Citations.]" (*Ibid*; see also *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 310 ["'A demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations. [Citation.]'"].)

II

We begin our analysis with plaintiff's claims of employment discrimination based on ethnicity or national origin, gender, and disability.

It is an unlawful employment practice for an employer "to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" based on that person's race, ancestry, national origin, physical disability, medical condition, or gender. (§ 12940, subd. (a).) FEHA is to be construed liberally for the accomplishment of its purposes. (§ 12993, subd. (a); *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 223 (*Harris*).) "In general, there are two types of illegal employment discrimination under FEHA: disparate treatment and disparate impact. [Citation.]" (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1379 (*Jones*); *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1533–1534.) Plaintiff's claims are for disparate treatment, i.e., that defendants treated her less favorably than others because of her ancestry or national origin, physical disability or medical condition, or gender.

California courts have employed the burden shifting approach of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 to claims for disparate treatment employment discrimination. "Based on the inherent difficulties of showing intentional discrimination, courts have generally adopted a multifactor test to determine if a plaintiff was subject to disparate treatment. The plaintiff must generally show that: he or she was a member of a protected class; was qualified for the position he sought; suffered an adverse employment action; and there were circumstances suggesting that the employer acted with a discriminatory motive. ([*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317,] 354–355 [(*Guz*)]), adopting the test applicable to federal discrimination claims in accordance with *McDonnell Douglas Corp. v. Green*[, *supra*,] 411 U.S. 792.)" (*Jones, supra*, 152 Cal.App.4th at p. 1379.)[4] This constitutes a prima facie showing which gives

---

[4] Once this prima facie case is made, the burden shifts to the employer to show a legitimate nondiscriminatory reason why the plaintiff was treated differently. Then the

rise to a presumption of discrimination.[5]  (*Guz, supra*, 24 Cal.4th at p. 355; *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 112.)

We first dispose of defendants' argument that "An essential element of a cause of action for both employment discrimination and harassment is conduct sufficiently severe or pervasive that it alters the conditions of employment and creates a work environment that is hostile or abusive to employees.  *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462 [(*Miller*)]."  While this is a requirement for a cause of action for harassment, as we discuss below, there is no authority that this is an element of a cause of action for discrimination.  The case cited by defendants does not support the proposition stated.  In *Miller*, the Supreme Court reiterated that "claims for sexual discrimination and sexual harassment are distinct causes of action, each arising from different provisions of the FEHA."  (*Id.* at p. 460, fn. 5; see also *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 705–709 [explaining distinctions between discrimination and harassment claims under FEHA].)  The court explained that it analyzed the case principally under the law applicable to sexual harassment.  (*Ibid.*)

"A plaintiff's burden in making a prima facie case of discrimination is not intended to be 'onerous.'  (*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253 ['The burden of establishing a prima facie case of disparate treatment is not onerous.'].)"  (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 322.)  In the context of judgment on the pleadings, the low threshold for alleging a prima facie case of discrimination is significant.

Here, plaintiff alleged that she is protected by FEHA by reason of her national origin or ancestry, physical condition or disability, or gender.  She alleged that she

plaintiff would have to show that the nondiscriminatory reason put forth by the employer was a pretext and that the true reason for the adverse employment action was discriminatory intent.  (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 991.)

[5] At trial, this presumption is "'legally mandatory'" although it is rebuttable.  (*Guz, supra*, 24 Cal.4th at p. 355.)

successfully performed her job duties throughout her tenure, and that she was treated less favorably than other employees who had different ancestry and gender, and who did not have a physical condition or disability. This was manifested, she claims, in several conditions of employment, including raises and the application of rules regarding the use of sick leave and vacation time, which would violate FEHA's prohibition of discrimination "in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a).)

We must take all properly pleaded allegations of the first amended complaint as true for purposes of review of a motion for judgment on the pleadings. We conclude they are sufficient to state prima facie cases of discrimination on all three bases claimed by plaintiff. Other appellate courts have applied the standards applicable in reviewing a ruling sustaining a demurrer to conclude that an allegation of a prima facie case of discrimination requires reversal. In *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, we reversed a judgment of dismissal based on a ruling sustaining a demurrer, finding that the complaint stated causes of action for discrimination under FEHA. It held plaintiff's allegation that she was fired because she was pregnant and unable to work during a high risk pregnancy, was sufficient for her causes of action for sex discrimination and physical disability discrimination under FEHA. (*Id*. at p. 1340.)

Similarly, in *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635 (*Rope*), the court reversed a demurrer sustained without leave to amend on the ground that the plaintiff had pleaded "minimally sufficient facts" to state a prima facie case of disability by association brought by a plaintiff who planned to take a leave of absence in order to donate a kidney to his sister. He alleged that he requested the leave, and that he was terminated two days before the leave took effect on a pretext of poor performance, raising a reasonable inference that the employer acted preemptively to avoid the expenses stemming from the plaintiff's association with his disabled sister. (*Id*. at pp. 657–658.)

At oral argument, counsel for defendants argued that no adverse employment action was taken against plaintiff because her request for medical leave was

10

accommodated and she chose to file her claim with DFEH before the allowed leave time expired. Defendants correctly point out that the allegations of the complaint do not support any claim that plaintiff was wrongly denied medical leave in 2011. Plaintiff alleged that her psychologist recommended leave for the month of April 2011. At the end of the month, he told plaintiff she was not ready to return to work and should remain off work through June 6, 2011. The complaint alleged: "Defendants indicated they would not hold Plaintiff's job past that date." The complaint alleged that plaintiff filed her discrimination charges with DFEH on May 21, 2011.

But plaintiff's theory is not that she was wrongly denied medical leave, but rather that she was constructively discharged. She alleged: "Plaintiff could not return to work thereafter [after the medical leave] because of the stress caused by Defendant MACKAYE's discriminatory conduct toward her and was constructively terminated as a result thereof."

"'Constructive discharge, like actual discharge, is a materially adverse employment action.' [Citation.] 'Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say "I quit," the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation. [Citation.]'" (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1253 [employing the standard of *Turner v. Anheuser Busch* (1994) 7 Cal.4th 1238, 1244-1245 (*Turner*), for constructive discharge].)

"[T]he standard by which a constructive discharge is determined is an objective one—the question is 'whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit.' [Citations.]" (*Turner*, *supra*, 7 Cal.4th at p. 1248.) "'[T]he adverse working conditions must be so intolerable that any reasonable employee would resign rather than endure such conditions.' [Citation.]" (*Id*. at p. 1247.)

Whether "'conditions were so intolerable as to justify a reasonable employee's decision to resign" is normally a question of fact.'" (*Vasquez v. Franklin Management*

11

*Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 827.) "The determination that a reasonable employee would have been compelled to quit is 'quintessentially a jury function.' [Citation.]" (*Page v. Mira Costa Community College Dist.* (2009) 180 Cal.App.4th 471, 498.)

Plaintiff has alleged circumstances from which a reasonable trier of fact could find that her working conditions were so intolerable that a reasonable person in her position would be compelled to resign. She alleged that she was treated less favorably than Caucasian employees, was denied the use of sick leave when it was warranted, and was harassed based on her ethnicity, as we discuss below. She alleged that her treatment by MacKaye caused her to suffer 13 anxiety attacks with high blood pressure. Although plaintiff suffered from a thyroid problem and heart murmur, MacKaye told others that plaintiff was a hypochondriac. As a result, to avoid such mistreatment, plaintiff went to work ill rather than using her sick leave.

Plaintiff further demonstrated that she could amend her complaint to allege constructive discharge through the allegations in her revised proposed second amended complaint. She alleged that MacKaye was aware of her medical conditions, which included asthma, hypothyroidism, and mental health and anxiety issues. Due to the stress of the panic attacks caused by MacKaye, plaintiff would vomit. MacKaye allegedly responded by rolling her eyes and making faces at her. Plaintiff's hair sometimes fell out in large clumps. MacKaye would tease plaintiff about being sick again and make fun of her, telling her that her health issues "were only in her head." When plaintiff told MacKaye she had vomited because of increased blood pressure, MacKaye told her that "'you don't throw up from high blood pressure,'" roll her eyes, and make faces at plaintiff. Eventually, plaintiff was diagnosed with Hashimoto's disease, which she alleged is an autoimmune disease which impacts the thyroid.

In summary, plaintiff has adequately pleaded each of the elements for a prima facie case of employment discrimination. Judgment on the pleadings was error and must be reversed on the discrimination cause of action.

12

Defendants complain that all three grounds of discrimination are combined in one confusing cause of action.  This claim is in effect a special demurrer for uncertainty.  Demurrers for uncertainty are disfavored "because ambiguities can reasonably be clarified under modern rules of discovery."  (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1135.)

III

Plaintiff also alleged hostile work environment due to harassment based on race, ethnicity or national origin, gender, or physical disability based on the same allegations we have discussed.  Section 12940, subdivision (j) prohibits an employer from harassing an employee because of race, national origin, ancestry, gender or physical disability, or medical condition.

Hostile work environment harassment in violation of section 12940, subdivision (j) has most commonly arisen in the context of sexual harassment.  A sexual harassment hostile environment claim requires a plaintiff to allege he or "she was subjected to sexual advances, conduct, or comments that were (1) unwelcome [citation]; (2) because of sex [citation]; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment [citations]."  (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 280 (*Lyle*).)  The requirement that harassment be severe or pervasive to allege an actionable hostile environment has been applied to racial harassment as well.  (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 878; *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 263–264 [hostile environment "must be assessed from the 'perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff'"].)

"The working environment must be evaluated in light of the totality of the circumstances:  '[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

13

work performance.' [Citation.]" (*Miller*, *supra*, 36 Cal.4th at p. 462.) "Harassment that is 'occasional, isolated, sporadic, or trivial' generally fails to meet this standard. [Citation.] There is both a subjective and objective component to this standard. [Citation.] '[A] plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail under the FEHA, if a reasonable person in the plaintiff's position, considering all the circumstances, would not share the same perception.' [Citation.]" (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 293 quoting *Lyle*, *supra*, 38 Cal.4th at pp. 283–284.)

We consider each basis for harassment separately. Plaintiff's allegations of gender-based harassment are meager. At oral argument, her counsel clarified that she is not claiming harassment based on gender. The first amended complaint alleges that on multiple occasions, MacKaye made comments to plaintiff and to another Hispanic employee, Letty Shiff, and to other Hispanic employees "about their Hispanic heritage in a demeaning way." The only specific examples given are the instances we have recounted, referring to flies on food in Mexico, MacKaye's claim that her Spanish vocabulary included the words for clean, pick-up, and trash; and a suggestion that plaintiff would enjoy a restaurant because it served tacos. Plaintiff's allegations of racial or gender harassment are not sufficient to allege severe or pervasive harassment actionable under FEHA. We have reviewed the allegations of harassment in the revised proposed second amended complaint, which do not cure the pleading deficiency.

Plaintiff's allegations of harassment based on physical disability or physical condition are more extensive. She alleged that she suffered from several medical conditions including hypothyroidism and a heart murmur, and that MacKaye repeatedly accused her of being a hypochondriac when plaintiff sought to take sick leave. She alleged that other non-Hispanic employees were allowed to use sick leave more liberally. Plaintiff alleged that she reported to work when she was ill, rather than face abuse by MacKaye. As a result of MacKaye's harassment with regard to her medical conditions, plaintiff alleged she suffered 13 panic or anxiety attacks. Taking these allegations to be true under the standard for review of judgment on the pleadings, we conclude that

14

plaintiff has adequately alleged that MacKaye's harassment of her based on her medical conditions or disability created a hostile environment which is actionable under FEHA. The trial court erred in granting judgment on the pleadings on the claim for harassment based on disability or medical condition.

IV

Defendants argue that plaintiff cannot state a cause of action for failure to prevent harassment or discrimination because the trial court properly granted judgment on her causes of action for harassment and discrimination. This is their only argument on this cause of action.

Since plaintiff has adequately alleged causes of action for discrimination and harassment, it follows that she has adequately alleged a cause of action for failure to prevent discrimination or harassment in violation of section 12940, subdivision (k). That statute makes it an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." We reverse the judgment as to this cause of action. (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1532 [reversing judgment on the pleadings on cause of action for failure to prevent sexual harassment in light of ruling reversing summary adjudication of sexual harassment claim].)

V

Plaintiff alleged wrongful termination in violation of public policy based on discrimination and harassment of her in violation of FEHA.

"'[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions.' (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.) 'To support a common law wrongful discharge claim, the public policy "must be: (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving

merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental."' [Citation.]" (*Mendoza v. Western Medical Center Santa Ana* (2014) 222 Cal.App.4th 1334, 1338.) The policies underlying FEHA satisfy the requirement of a public policy. (*Ibid.*)

"To establish a claim for wrongful discharge in violation of public policy, a plaintiff must plead and prove (1) a termination or other adverse employment action; (2) the termination or other action was a violation of a fundamental public policy, as expressed in a constitutional, statutory, or regulatory provision; and (3) a nexus between the adverse action and the employee's protected status or activity. [Citation.]" (*Rope*, *supra*, 220 Cal.App.4th at p. 660.)

In light of our conclusions as to the discrimination and harassment claims, we reverse judgment on this cause of action as well. (*Rope*, *supra*, 220 Cal.App.4th at p. 660 [reversing order sustaining demurrer to wrongful discharge cause of action in light of reversal of order sustaining demurrer to discrimination claim].)

VI

Plaintiff's fourth cause of action is for breach of an implied covenant of good faith and fair dealing. She alleged an oral agreement with Goodland, which "included the additional terms and conditions of employment as promulgated in written memoranda, policies, customs and practices at GOODLAND." She also alleged an oral agreement with Hungry Heart to perform duties as an accounts payable clerk, but does not allege additional terms as promulgated in company policies or customs.

Plaintiff alleged these oral agreements "contained an implied-in-law covenant of good faith and fair dealing that the parties would act with fairness and good faith towards each other and that the parties would do nothing to hinder or impair the rights of each other to receive and enjoy the benefits of the agreement." She alleged that defendants breached this covenant by terminating her "for false reasons stated and for terminating him based on his disability."

16

As to the allegation in the first amended complaint that she was wrongfully fired, we question whether this allegation in fact refers to plaintiff, since it refers to a male plaintiff, and the plaintiff in this case was not terminated. Assuming this was a mere drafting oversight, insofar as the allegation refers to plaintiff it does not state a cause of action. In *Guz*, *supra*, 24 Cal.4th at pages 349–350, the Supreme Court explained that the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." In light of the presumption of Labor Code section 2922 that all employees serve at will, an employer "may act peremptorily, arbitrarily, or inconsistently, without providing specific protections such as prior warning, fair procedures, objective evaluation, or preferential reassignment." (*Id.* at p. 350.) For that reason, an employee cannot claim a breach of the covenant of good faith and fair dealing based on what is in effect, a wrongful termination. (*Ibid.*, and at pp. 352–353.)

In her revised proposed second amended complaint, plaintiff alleged that defendants breached the covenant by discriminatory and harassing conduct in the unequal application of sick time rules; in constructively terminating plaintiff based on her disability; and by failing to give her a raise because of her ethnicity. In *Guz*, *supra*, 24 Cal.4th at page 353, footnote 18, the Supreme Court observed: "We do not suggest the covenant of good faith and fair dealing has no function whatever in the interpretation and enforcement of employment contracts. As indicated above, the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits. Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." (Italics omitted.)

We take our cue from the Supreme Court and conclude that the trial court erred by denying plaintiff leave to file a second amended complaint revising the allegations of breach of the covenant of good faith and fair dealing. (*Rodriguez v. County of Los Angeles* (2013) 217 Cal.App.4th 806, 810 ["[w]here . . . motion for judgment on the

17

pleadings is granted, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment"].)

VII

Plaintiff's fifth cause of action is for intentional infliction of emotional distress. She alleged that the conduct of MacKaye was so extreme and outrageous that it caused her to suffer mental and emotional distress.

"""""A cause of action for intentional infliction of emotional distress exists when there is """""(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.""""" [Citations.]" [Citation.]' (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1609.)" (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 780.) "In order for conduct to be considered outrageous for the purpose of tort liability, it 'must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.' [Citations.]" (*Ibid.*)

"Emotional distress damages . . . may be available when an employee is subject to unlawful harassment under the FEHA. [Citation.]" (*Harris*, *supra*, 56 Cal.4th at p. 234.) "A claim for [intentional infliction of emotional] distress arising out of employment is 'not barred where the distress is engendered by an employer's illegal discrimination practices.' [Citations.] Neither discrimination nor harassment is a normal incident of employment. [Citations.]" (*Nazir v. United Airlines, Inc., supra,* 178 Cal.App.4th at p. 288.)

Since plaintiff has adequately alleged causes of action for discrimination and harassment based on MacKaye's behavior, we conclude the defendants are not entitled to judgment on this cause of action. We reject defendant's argument that this claim is subject to the exclusive jurisdiction of the Workers Compensation Act. "[E]motional distress caused by [an employer's] allegedly unlawful decision to demote [a plaintiff

18

employee] is recoverable in a civil action and exempt from the [Workers Compensation Act] exclusive remedy provisions." (*Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 692.) "Employer actions that violate a fundamental public policy, however, are exempt from the exclusive remedy provisions of the WCA because they 'cannot under any reasonable viewpoint be considered a "normal part of the employment relationship."' [Citations.]" (*Id.* at p. 695.)


## VIII

Plaintiff's sixth cause of action is for negligent infliction of emotional distress.

California does not recognize an independent tort for negligent infliction of emotional distress. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.) The proper tort is negligence, and the elements are duty, breach of duty, causation, and damages. (*Ibid.*) Duty of care is a question of law, dependent on the foreseeability of risk and a weighing of policy considerations for and against imposition of liability. (*Ibid.*)

In her reply brief, plaintiff characterizes the issue as though she had alleged a cause of action for negligence, contending that she adequately alleged a breach of duty. The revised proposed second amended complaint also alleged a cause of action for negligent infliction of emotional distress rather than a negligence cause of action. She alleged: "Plaintiff is further informed and believes that Defendant[] MACKAYE failed to exercise reasonable care and knew or should have known that the conduct set forth hereinabove would cause severe emotional distress to Plaintiff." This does not adequately allege a cause of action for negligence.


## IX

MacKaye argues that she is not personally liable for discrimination against plaintiff and for failure to prevent discrimination against plaintiff (first and seventh causes of action). Counsel for plaintiff conceded the point at oral argument. We agree. FEHA does not impose personal liability on an individual employee or manager for discrimination. (*Reno v. Baird* (1998) 18 Cal.4th 640, 645–646.) But an employee who

19

harasses another employee may be personally liable for harassment. (*Lewis v. City of Benicia, supra,* 224 Cal.App.4th at p. 1524.)

MacKaye is entitled to judgment on the first and seventh causes of action only.

## DISPOSITION

We reverse the judgment on the pleadings on the causes of action for discrimination, failure to prevent discrimination, harassment based on physical disability or medical condition, wrongful termination in violation of public policy, and intentional infliction of emotional distress. Plaintiff is to have an opportunity to amend her pleading with respect to the covenant of good faith and fair dealing, as she sought to do in her revised proposed second amended complaint. Defendant MacKaye is entitled to judgment on the pleadings on the causes of action for discrimination and failure to prevent discrimination. Judgment on the pleadings is affirmed on the causes of action for harassment based on gender or national origin and negligent infliction of emotional distress. Each party is to bear its own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20