Filed 1/28/15  Lockhart v. Delicato Vineyards CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| RHONDA LOCKHART, | C070163 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201000236954CUOESTK) |
| v. | |
| DELICATO VINEYARDS, INC., | |
| Defendant and Respondent. | |

Plaintiff Rhonda Lockhart appeals from summary judgment entered in favor of her former employer, defendant Delicato Vineyards, Inc., in this suit alleging racial and gender discrimination and retaliation under the Fair Employment and Housing Act or FEHA. (Gov. Code, § 12940 et seq.; unless otherwise stated, statutory references are to the Government Code.) Plaintiff contends she supplied evidence disputing defendant's evidence of a legitimate business reason for terminating plaintiff's employment, and the trial court improperly weighed the conflicting evidence. We affirm the judgment.

1

FACTS AND PROCEEDINGS

On review of summary judgment, we view the facts in the light most favorable to plaintiff as the losing party opposing summary judgment. (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 884, fn. 5.) We do not, however, accept plaintiff's misstatement of the facts.

On May 29, 2007, defendant, a family-owned winery in Manteca, hired plaintiff, a Black female, as Purchasing Manager supervising three subordinates. Defendant terminated plaintiff's employment in July 2009.

In August 2007, plaintiff and an administrator in the accounting department each complained to Human Resources (HR) that the other was unprofessional. The administrator submitted a harassment complaint. HR determined no conduct was based on any protected status, and both women had been unprofessional in dealing with each other.

Plaintiff's performance review for 2007 was favorable but stated her score was "based on expectations given for the short time employed."

Throughout plaintiff's employment, some of her subordinates, peers, and superiors complained to HR about plaintiff, and plaintiff complained to HR about others in the company. The others complained about difficulty working with plaintiff, her inability to manage effectively, her refusal to delegate tasks, her lack of trust in her team, and the team's reciprocal lack of trust in plaintiff. Plaintiff complained to HR that her staff was unskilled, incompetent, and difficult to manage. HR encouraged her to provide internal or outside training. Plaintiff's complaints about one subordinate led defendant to discharge that person. Plaintiff complained to HR about her inability to get along with other managers, and they complained to HR about her. These complaints required attention from the HR department. At no time did plaintiff tell defendant she thought she was being discriminated against because of her race or gender.

2

Plaintiff acknowledged in her deposition that she had difficulty getting along with many of the people who worked for the company (at least seven of whom she mentioned by name in her deposition). Plaintiff blamed the difficulties on the others, saying they did not like her and were negative. She ceased communicating verbally with two managers of other departments because one had a demeaning tone of voice, and the other "would tell her boss that I wouldn't allow her to do her job, which was not true, and I was constantly having to defend myself to show him examples of how I needed her to get involved and she would just refuse." Plaintiff admitted HR held meetings with plaintiff and various people with whom she had problems.

In deposition, plaintiff claimed the others treated her differently because she is Black. But the basis for her belief was that "[W]hite people have issues with taking direction from Black people . . . especially a woman." She admitted she never complained to defendant about race discrimination, because "Why make my life any worse than it already was?"

Plaintiff attended the inauguration of President Obama in January 2009. Her direct supervisor, Chief Financial Officer (CFO) Don Allen, asked in his normal tone of voice, which she described as "snide like," if she would have attended if Obama were White. In this lawsuit, plaintiff claims this comment was racist, though she never complained to defendant.

In February 2009, defendant gave plaintiff a $3,000 bonus, despite plaintiff's poor management performance, because she did well in her purchasing duties.

In March 2009, Allen discussed with plaintiff her 2008 performance review (after Human Resources reviewed and approved it). She received high personal achievement scores but low manager/teamwork scores. The appraisal noted strained working relationships between plaintiff and others inside and out of her department, and stated plaintiff had been counseled over the past year on the interpersonal issues, but she had been slow to incorporate them into her work style. She wanted to assign blame rather

3

than focusing first on problem-solving, and that would have to change for her to be successful. The appraisal said, "In the course of the past year the amount of time used by HR and [plaintiff's supervisor Don Allen] to deal with issues related to your interactions is inordinate to other managers; you need to work at softening your interactions from confrontational to informational . . . ."

In May 2009, Allen and Human Resources Vice President Lillian Bynum discussed restructuring the purchasing department in response to plaintiff's management issues, by hiring a purchasing director and having plaintiff focus on the tasks she did well as a case goods purchasing manager.

In June 2009, plaintiff e-mailed HR that it was "odd" she was not offered the opportunity to apply for the purchasing director position that was being advertised. An HR representative replied, "You can apply for this position if you wish to do so. However, it was my understanding that Don Allen was supposed to speak to you and explain to you the reason why we are recruiting for this position. Therefore, I strongly encourage you to speak to Don before you apply. Let me know if you need anything else." Plaintiff wrote back: "When Don [Allen] went over my review in March, he mentioned that 'perhaps' he should 'hire a guy and pay him $125k to be the Director of Purchasing.' I took his statement to mean he was just venting his dissatisfaction with the purchasing department and that I needed to make some adjustments, which I have since done." HR replied that some of plaintiff's duties were listed in the job description for director, but others had been added, and plaintiff should talk to Allen. The HR representative and Bynum did not view plaintiff's comment as a gender discrimination claim. Rather, in the context of the e-mail exchange, and the ongoing situation, plaintiff's comment indicated disagreement with defendant over the assessment of her managerial abilities, and a mistaken belief that the director would earn much more than the actual salary.

Bynum and Allen met with plaintiff to discuss the restructuring. They reiterated her inability to manage her staff effectively and her problems with the Operations Team. Plaintiff insisted she was an effective manager. Defendant hired outside management consultant Jodi Blom to interview a variety of employees and managers. The interviews confirmed defendant's view that plaintiff was unable to get along with others and effectively manage her team.

On July 23, 2009, defendant terminated plaintiff's employment. The decision was made by Bynum and defendant's President and Chief Executive Officer, Christopher Indelicato, with input from Allen. The reasons stated in the separation summary were "loss of confidence in her ability to successfully manage and lead assigned purchasing staff and lack of trust amongst her staff, peers, internal customers, management, and the CEO. Ms. Lockhart has demonstrated a lack of ability or willingness to function as a collaborative member of cross-functional work teams as strongly shown by the team interviews recently completed. In addition, Ms. Lockhart's behavior is disruptive to workflow and often requires the counterproductive involvement of several people to attempt resolution of the issues at hand. In conclusion, the Company can no longer tolerate this type of conduct by a member of its management team."

In September 2009, defendant hired a Black male as purchasing director.

In June 2010, plaintiff filed her complaint for damages, alleging racial and gender discrimination, retaliation for complaining about discrimination, and wrongful termination in violation of the public policy against discrimination and retaliation. She initially alleged age and medical condition discrimination but later dismissed those claims.

Defendant moved for summary judgment, asserting (1) there was no prima facie case of discrimination in that there was no evidence of a causal connection between plaintiff's race or gender and the termination; (2) plaintiff could not present any facts to dispute defendant's evidence that it dismissed plaintiff solely for legitimate business

reasons; and (3) plaintiff did not engage in any protected activity to support her retaliation claim.

In opposing summary judgment, plaintiff misrepresented the facts. For example, she asserted, "There is evidence to show that Lockhart engaged in protected activity. Even Don Allen understood that 'Ms. Lockhart requested an investigation.' " She cited Allen's deposition. However, Allen was talking about the outside consultant hired after the meeting in which Allen and Bynum explained the restructuring necessitated by plaintiff's management deficiencies, and plaintiff asserted she was a good manager and believed others would back her up. Bynum attested plaintiff "urged" them to talk to others, which plaintiff disputes.

Plaintiff also claimed she reported discrimination in the bottling department, but defendant never investigated. The cited evidence shows plaintiff took some Hispanic bottling "guys" out for lunch, and they said their boss was racist in giving promotions, but they did not want to go to HR. Plaintiff told them to go to HR. Plaintiff then related the conversation to Bynum. Bynum testified she did not investigate because she was already apprised of the situation, which involved one person who had not been promoted.

Plaintiff asserted "Investigations by her superiors showed no evidence of problems with Ms. Lockhart's interpersonal skills." However, the cited evidence is Bynum's deposition in which she said there were some employees with whom plaintiff did not appear to have issues.

Plaintiff also attempted to show a triable issue by relying on deposition testimony of a subordinate she hired, Eldridge Culpepper, a Black male, who said he never experienced a problem with plaintiff's interpersonal skills, and he thought she communicated well with others. When interviewed by the consultant, Culpepper initially supported plaintiff but, after being sent away to fill out a questionnaire, he returned and told HR he needed to be honest about the problems in the department and felt a "lack of team." Plaintiff speculates someone coerced him to change his opinion, but she presents

6

no evidence of coercion. He testified in deposition that he thought the consultant was trying to persuade him to speak negatively about plaintiff, but his perception was based only on the fact that the consultant was asking about an individual manager.

The trial court granted summary judgment. The court determined plaintiff failed to make a prima facie case in that she failed to show any causal connection between her race or gender and her termination and failed to show she engaged in protected activity for her retaliation claim. Defendant showed its reasons for terminating plaintiff were legitimate, nondiscriminatory, and nonretaliatory, i.e., she did not satisfactorily manage her staff and had problems with interpersonal relationships with her peers. Plaintiff presented no evidence that defendant's reasons were pretextual or that defendant was motivated by discriminatory or retaliatory factors.

DISCUSSION

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

Elements of a prima facie case of employment discrimination under the FEHA are that (1) plaintiff was a member of a protected class; (2) she was performing competently in her position; (3) she suffered an adverse employment action; and (4) other circumstances suggest discriminatory motive. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*).) Elements of a FEHA retaliation claim are that the plaintiff engaged in a "protected activity," was subjected to adverse employment action, and a causal connection links the two. (§ 12940, subd. (h); *Rope v. Auto-Chlor System of Washington, Inc*. (2013) 220 Cal.App.4th 635, 651.) "Protected activity" includes "opposition," including informal complaints, to employment practices made unlawful by the FEHA. (*Rope, supra*, 220 Cal.App.4th at pp. 651-652.) The viability of a retaliation claim does not depend on viability of the underlying discrimination claim. (*George v.*

7

*California Unemployment Insurance Appeals Board* (2009) 179 Cal.App.4th 1475, 1490.)

"In cases alleging employment discrimination, we analyze the trial court's decision on a motion for summary judgment using a three-step process that is based on the burden-shifting test that was established by the United States Supreme Court for trials of employment discrimination claims [under analogous federal law]. . . . This test 'reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create reasonable likelihood of bias and are not satisfactorily explained.' [Citation.]" (*Serri, supra*, 226 Cal.App.4th at p. 860.)

"In a summary judgment motion in 'an employment discrimination case, the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.' [Citations.]" (*Serri, supra*, 226 Cal.App.4th at p. 861.) "Legitimate, nondiscriminatory" reasons are reasons that are facially unrelated to prohibited bias and, if true, would preclude a finding of discrimination, e.g., failure to meet performance standards. (*Id.* at p. 861.) "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' [Citation.]" (*Ibid.*) " '[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.' [Citation.] It is not sufficient for an employee to make a bare prima facie showing or to simply deny the

credibility of the employer's witnesses or to speculate as to discriminatory motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer. [Citations.]" (*Id*. at pp. 861-862.)

While this appeal was pending, the California Supreme Court in *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, held that a plaintiff seeking damages in an employment discrimination case must prove that the illegitimate criterion was a *substantial* motivating factor in the termination, not merely *a* motivating factor. (*Id*. at p. 232.) *Harris*'s articulation of a heightened standard applies to this appeal, because judicial decisions apply retroactively to cases not yet final. (*Waller v. Truck Ins. Exchange* (1995) 11 Cal.4th 1, 23-25; *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1334-1335.) And the heightened standard would certainly apply on remand were we to reverse the summary judgment.

Plaintiff assumes the record shows a prima facie case of discrimination. She sees racial discrimination in Allen's question whether she would have attended President Obama's inauguration if the President were White. She sees gender discrimination in Allen's comment that he should hire a "guy." We do not see any causal connection between either comment and the employment termination but will assume a prima facie case for purposes of the appeal.

Defendant clearly showed a legitimate business reason for firing plaintiff in that she could not get along with multiple people, taxing the resources of the HR department. Not only did plaintiff fail to offer any evidence that the reason was a pretext, but her own deposition acknowledged the validity of the reason, and she did not present any evidence of mixed motive that might support an inference that unlawful discrimination was a substantial motivating factor (or even a motivating factor) in the dismissal.

Defendant argues Allen's comments about Obama and hiring "a guy" were mere stray remarks by a nondecisionmaker in the decision to fire plaintiff, and therefore do not

defeat summary judgment.  We will assume for purposes of this appeal that Allen participated with Indelicato and Bynum in the decision to fire plaintiff.

The "stray remarks" doctrine allows a court to assess remarks in isolation and disregard the potentially damaging nature of discriminatory remarks simply because they are made by nondecisionmakers or by decisionmakers unrelated to the decisional process.  (*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 540 (*Reid*).)  "Under the stray remarks doctrine, . . . 'a "stray" discriminatory remark that a court determines is unconnected to the adverse employment action is insufficient evidence of a discriminatory motive, as a matter of law, and may be wholly disregarded by the court [in summary judgment proceedings].'  [Citation.]  In *Reid*, the Supreme Court held that California courts are not to apply the stray remarks doctrine because ' "its categorical exclusion of evidence might lead to unfair results." '  [Citations.]  Instead, such remarks are to be considered along with all the other evidence in the record in determining whether a rational inference of discrimination exists.  [Citation.]"  (*Serri, supra*, 226 Cal.App.4th at p. 867.)

Contrary to plaintiff's argument, California's rejection of the stray remarks doctrine does not preclude a determination that particular remarks do not support a rational inference of discrimination.  California merely rejects "categorical exclusion" of such evidence.  Where there is other evidence of pretext, an otherwise stray remark may suffice to defeat summary judgment.  (*Reid, supra*, 50 Cal.4th at p. 542.)

In *Serri, supra*, 226 Cal.App.4th 830, a university terminated an employee after she failed for three years to comply with her duty to prepare an annual affirmative action plan and made misrepresentations about her failure.  (*Id*. at p. 837.)  She sued, claiming the real reason for the termination was racial and ethnic discrimination against her as a Puerto Rican.  (*Id*. at pp. 837, 866, fn. 16.)  The trial court granted summary judgment in favor of the employer.  The appellate court rejected the employee's argument that "stray remarks" about her ethnicity precluded summary judgment.  (*Id*. at pp. 866-868.)  The remarks were that the university president once said her shawl looked like a poncho; he

10

liked her hair better when she blew dry her curly hair because it looked more professional; and he would greet her with "What do you want?" instead of "Hi." "How are you?" (*Id*. at p. 867.) She also claimed a discriminatory and demeaning remark by a university employee who said there were "nice places to eat" near a potential site for her new office, which she took to mean a nearby taqueria. (*Ibid*.) And a female employee named Jane Curry testified in deposition that she was told by her department head that she would be paid better if she were less outspoken, not divorced, and Catholic. (*Ibid*.) The plaintiff claimed this remark as evidence that the university president did not like women or Latinas and condoned a discriminatory atmosphere. (*Ibid*.)

The *Serri* court concluded "this evidence does not demonstrate a discriminatory animus or motive. At best, even when examined in the aggregate, this evidence raised only a weak suspicion that discrimination was a basis for Serri's termination. This weak suspicion may have sustained Serri's burden of proving a prima facie case, but it does not amount to substantial evidence of discrimination necessary to defeat summary judgment." (*Id*. at p. 868.)

Here, Allen's question about Obama and reference to hiring a "guy" are not just stray remarks; they are the only items of evidence that even remotely reference race or gender. They do not raise even a weak suspicion that defendant dismissed plaintiff for a discriminatory reason. Racial animus cannot be inferred simply because a White person asked a Black person whether she was traveling to Washington because of the historically-significant inauguration of the nation's first Black president. Plaintiff offers no other evidence of racial discrimination. Plaintiff's e-mail that Allen said perhaps he should "hire a guy and pay him $125K to be the Director of Purchasing," on its face and in context, did not hint at gender discrimination but merely the need for restructuring the department because of plaintiff's deficiencies. That defendant ultimately hired a male to replace plaintiff does not bootstrap the e-mail into a potential claim of gender discrimination.

11

Moreover, plaintiff does not dispute the interpersonal difficulties that led to her dismissal.  Plaintiff argues defendant "never fully substantiated" the complaints about her that were described in defendant's declarations.  However, plaintiff herself substantiated the declarations by admitting in her deposition testimony that various people complained to HR about her, that she did not get along with various people, and that HR had to get involved in these matters.  Ignoring the undisputed evidence, plaintiff argues defendant "relied heavily" on an "independent" consultant who was not really independent and who was a mere façade to cover up Allen's discriminatory intent to fire plaintiff.  However, the consultant's interviews merely confirmed what defendant already knew.

Plaintiff claims Culpepper's deposition testimony directly contradicted the veracity and reasonableness of defendant's asserted business reason for terminating her employment.  Not so.  Culpepper said *he* did not have any problem working with plaintiff.  That some people got along with plaintiff does not undermine the undisputed evidence that plaintiff did not get along with several people and that these problems took up HR resources.

Plaintiff argues an inference of discriminatory motive arises from the fact defendant transferred rather than terminated her White male predecessor.  However, defendant tried to give plaintiff a similar opportunity by restructuring the department.

That plaintiff was the first Black *purchasing* manager in the Manteca company's history does not raise a suspicion of racism.  Plaintiff's brief asserts she was the only Black manager in the company's history, but the citations to the record do not include any evidence supporting the assertion.

We conclude the evidence showed a legitimate business reason for plaintiff's termination, and there was no evidence of discriminatory motive or even a mixed motive.  Plaintiff fails to show any triable issue as to discrimination.

As to retaliation, plaintiff's opening brief develops no argument or analysis, and we could therefore consider it abandoned.  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451,

12

466, fn. 6.)  Plaintiff's reply brief argues retaliation, asserting she "had a history of making complaints" to HR about Allen.  However, for retaliation, she had to complain about practices unlawful under the FEHA.  She claims her e-mail that Allen said he should hire a "guy" conveyed a complaint that Allen was biased against women and intended to replace her with a man despite the improvements she made, and that Allen believed men deserved to be paid more than women.  However, to constitute retaliation, there must be evidence the employer knew the employee was engaged in activities in opposition to perceived unlawful practices under the FEHA.  (*Rope, supra*, 220 Cal.App.4th at p. 653.)  Plaintiff's e-mail, on its face and in the context of the e-mail exchange and plaintiff's inability to handle the job, gave no hint that plaintiff was opposing practices forbidden by the FEHA.

Plaintiff's appellate brief claims that, after Allen's question about Obama, plaintiff asked to be reassigned to a different supervisor.  However, plaintiff did not report the Obama comment to defendant, and the cited evidence shows only that plaintiff requested a different supervisor because Allen blamed her for the loss of an employee who quit after a conflict with plaintiff.

Plaintiff fails to show grounds for reversal.

13

DISPOSITION

The judgment is affirmed.  Defendant will recover costs on appeal.  (Cal. Rules of Court, rule 8.278.)

      HULL         , J.

We concur:

      RAYE         , P. J.

      HOCH         , J.