Filed 5/1/15  Safari v. County of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SELINA SAFARI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B255142<br><br>(Los Angeles County<br>Super. Ct. No. BC474190) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Deirdre Hill, Judge.  Affirmed.

Law Offices of Marc Appell and Marc J. Appell for Plaintiff and Appellant.

Gutierrez, Preciado & House, Calvin House and Abraham Escareno for Defendant and Respondent.

_____

Selina Safari is a Supervising Nurse caring for inmates of the Los Angeles County jail. She brought this action against the County for disability discrimination and related violations of the Fair Employment and Housing Act (FEHA). (Gov. Code, §§ 12920, et seq.)[1]

The trial court granted summary judgment to the County on the ground that Safari, who suffers from occasional mental and physical disabilities brought on by job-related stress, "is unable to establish a disability under the FEHA." We affirm.

We hold that a person is not entitled to protection under FEHA merely because work-related stress makes it difficult for her to work a particular shift at a certain location. Furthermore, Safari cannot state a cause of action for retaliation for exercising rights protected by FEHA because her requests for reasonable accommodation are not protected activities under the statute.

## FACTS AND PROCEEDINGS BELOW

Safari began working as a nurse in the Los Angeles County Sheriff's Department in October 2005. The County promoted her to the rank of Supervising Nurse in January 2010 and assigned her to the "early morning" shift (10:00 p.m. to 6:00 a.m.) at the Sheriff's Correctional Treatment Center (CTC).

She claims that a few months after beginning to work the early morning shift at the CTC she began to suffer from "headaches, fatigue, dizziness, dehydration, neck and back pain, abdominal pain, loss of appetite, weight loss, nausea and vomiting."

On May 18, 2010, Safari filed a workers compensation claim and provided the County with a doctor's note stating that she needed to be off work until May 21, 2010. Later that month Safari submitted a doctor's note stating that she could return to work in June without any physical limitations but that she had to be placed on the day shift.

On June 7, 2010, Safari submitted another doctor's note stating that she required more time off and that, upon her return, she should not work the night

---

[1] All statutory references are to the Government Code unless otherwise noted.

2

shift and should not work at the CTC.  Another note that same day stated that Safari could return to work on June 21, 2010, "on a day shift in a different unit."

On June 22, 2010, the County notified Safari that although the restrictions listed on her doctors' notes "are not the typical accepted work accommodations" the County "will temporarily accommodate these restrictions in good faith." Accordingly, Safari was assigned to the day shift at the Twin Towers facility for 30 days.  At the end of the 30 days, the County continued Safari's assignment for an additional 13 days.

On August 6, 2010, Safari met with her supervisor.  The supervisor's notes state that she explained to Safari that the day shift at Twin Towers was no longer available because of budgetary cutbacks and offered her a day shift at the CTC.  According to Safari the supervisor told her that she was not going back to the Twin Towers because she "had been accommodated enough."  The supervisor and Safari concur that Safari agreed to the CTC assignment "under duress" because she believed it was contrary to her physician's restrictions.

On August 16, 2010, Safari gave her supervisor a doctor's note stating that she was restricted from evening and early morning shifts at the CTC.  That same day Safari participated in another meeting with her supervisors to discuss her assignment.  That meeting resulted in a 30 day assignment to the day shift at the CTC.

Safari met with her supervisors on September 16, 2010, the day that the temporary assignment to the CTC day shift was set to expire.  A document entitled "Interactive Process Meeting Worksheet" prepared after the meeting states that Safari cannot "perform the Essential Job Functions of the job without an accommodation" and a reasonable accommodation is that Safari be "assigned to day shift CTC."  The worksheet further states that:  "Employee accepted offer of day shift at CTC.  The worksheet is signed by Safari and her supervisors.

The "Interactive Process" worksheet did not state whether the assignment to the day shift at the CTC would be temporary or permanent. At the end of September 2010, however, the County sent Safari a notice stating that it was giving her a "temporary work hardening assignment that is compatible with your limitations" and that the assignment would not involve working the evening or early morning shifts at the CTC. The assignment was from the end of September 2010 to mid-November 2010.

The same day that the County sent Safari notice of the "temporary work hardening assignment" described above she had another "Interactive Process Meeting" with her supervisors. According to the worksheet from that meeting Safari agreed with the restriction against her working evening and early morning shifts, the County agreed that Safari could not perform her essential job functions without an accommodation and both parties agreed that assignment to the day shift at the CTC would be a reasonable accommodation. The worksheet did not state whether the assignment would be permanent or temporary.

On December 3, 2010, the County transferred Safari back to her original early morning shift at the CTC.

On December 28, 2010, Safari provided the County with a doctor's note stating that she was to be off work entirely until January 26,2011, and that she must be returned to the morning shift.

On January 12, 2011, the County notified Safari that because she was unavailable for duty, she was being placed on the day shift and assigned to her home .

A note dated January 26, 2011 states that an Interactive Process Meeting was held between Safari and her supervisor and that "we are unable to accommodate the employee." Safari claims without dispute that in this meeting her supervisor told her "the County had accommodated [her] enough."

4

Safari remained at home until June 2011 when the County notified her that a temporary assignment to the day shift at the Men's Central Jail had become available "that may accommodate the temporary work restrictions provided by [Safari's doctor]."

The County issued a "Medical Service Order" on June 6, 2011, authorizing Safari's temporary placement on a morning shift "only."

A worksheet reporting an Interactive Process Meeting on June 7, 2011 states that Safari agreed with her work restriction to the day shift only. The worksheet again stated that Safari cannot perform her essential job functions "without an accommodation" but a handwritten note on the form states: "Can perform essential functions now."

In July 2011, Safari underwent a psychological evaluation by Dr. Lisa Wolf. The evaluation included a three hour face-to-face interview and Wolf's review of medical records from Safari's primary care physicians.

Wolf diagnosed Safari as suffering from "major depressive disorder" and "anxiety" both of which, she found, stemmed from Safari's assignment to the CTC. In her assessment of Safari's disability, Wolf wrote: "It was only after being assigned to the Correctional Treatment Center (CTC) on 1/17/10, that the claimant encountered work stress sufficient to compromise her emotional condition and undermine her ability to function at work." This stress, Wolf stated, was caused by "what [Safari] describes as extreme understaffing, particularly during night and weekend shifts." Safari "feared that an inmate/patient could be injured as a result of understaffing [and] as the supervising nurse, she feared that her own license could be jeopardized by an unavoidable error or omission." As a result of these pressures, Wolf concluded, Safari "developed a variety of psychiatric and physical symptoms." These included difficulty sleeping, loss of appetite, frequent headaches, "neck pain, nausea, vomiting, dizziness and lightheadedness." Safari's physical symptoms "were a consequence of her emotional distress," Wolf concluded, "and were not due to any organic pathology." "[I]t was the work stressors

5

encountered [at the CTC], not the promotion or shift change, per se, that caused Ms. Safari's psychiatric injury." Specifically, Wolf found, "[i]t was the understaffing at CTC and the attendant threats to her professional license, that caused her psychiatric injury."

In February 2012, Safari got into a verbal altercation with one of her subordinate nurses, Carol Carroll. Later that month, Dr. Wolf submitted a report stating that Safari could no longer act as direct supervisor to Nurse Carroll.

On April 3, 2012, the County offered Safari a "temporary modified/alternative accommodation" as a non-supervisory nurse on the day shift at the Inmate Reception Center. She accepted.

Not long after, Nurse Carroll was promoted to nursing supervisor at the Twin Towers facility. This position was not offered to Safari.

In May 2012, Safari was placed off work by her physician and had had not returned as of the date of the summary judgment hearing.

Safari brought this action against the County alleging four causes of action under FEHA: discrimination based on disability; retaliation for exercising rights protected by FEHA; failure to accommodate her disability; and failure to engage in the interactive process regarding accommodation of her disability.

The trial court granted the County's motion for summary judgment on the ground that all four causes of action arose from the County's alleged failure to accommodate Safari's disability, but since Safari could not show that she was disabled as defined in FEHA, she was not entitled to an accommodation.

## DISCUSSION

### I. STANDARD OF REVIEW.

To prevail on a motion for summary judgment a defendant must show by evidence, not argument, that the plaintiff cannot establish one or more elements of the plaintiff's causes of action or that the defendant has a complete defense to the claims. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th

6

826, 855.) A defendant may make this showing either by presenting evidence which conclusively negates an element of each of plaintiff's causes of action or conclusively establishes a defense to each cause of action, or by presenting evidence that the plaintiff does not possess and cannot reasonably obtain evidence to support its claims. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 854-855, fn. 22.) Only if the defendant meets this burden does the burden shift to the plaintiff to show the existence of a triable issue of fact with respect to the cause of action or defense. (*Id*. at p. 850.)

In urging the existence or nonexistence of a triable issue of material fact, a party is not confined to its own evidence but may also rely on the evidence submitted by the opponent. (Code Civ. Proc., § 437c, subd. (c).) In construing the evidence the moving party's showing is "strictly scrutin[ized]" while the opposing party's showing is viewed "liberally." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Any doubts about whether the motion should be granted "should be resolved in favor of the party opposing the motion." (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.)

We review the trial court's summary judgment ruling de novo to determine whether the moving party met its burden of showing that there is no triable issue of any material fact and that it is entitled to judgment as a matter of law. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

## II. WORK-RELATED STRESS THAT ONLY AFFECTS SAFARI'S ABILITY TO WORK THE EARLY MORNING SHIFT AT THE CTC DOES NOT ENTITLE HER TO PROTECTION UNDER FEHA.

A person is entitled to protection under FEHA if she has a physical or mental disability or medical condition that "limits a major life activity," such as working. (§ 12926, subds. (j)(1)(C) & (m)(1)(B)(iii).) A mental or psychological disability "limits" a major life activity "if it makes the achievement of the major life activity difficult." (§ 12926, subds. (j)(1)(B) & (m)(1)(B)(ii).) It is undisputed that Safari suffers from a mental or psychological disorder or condition. Dr. Wolf, the psychologist who examined her, found that she suffered from "major depressive disorder." Under FEHA, mental disabilities include "clinical depression." (§ 12926.1, subd. (c); and see

7

*Auburn Woods I Homeowners Assn. v. Fair Employment & Housing Com.* (2004) 121 Cal.App.4th 1578, 1592-1593 [depression can limit a major life activity].) Furthermore, the County does not dispute that while working the graveyard shift at the CTC Safari "suffered from depression, anxiety and insomnia."

The trial court concluded, however, that Safari's mental disorders did not "limit" her ability to work because she is indisputably able to perform the occupation of Supervising Nurse, just not on the early morning shift at the CTC.

In reaching this conclusion the court relied on a 1993 case, *Maloney v. ANR Freight System, Inc.*(1993) 16 Cal.App.4th 1284 (*Maloney*).

In *Maloney*, a truck driver with one kidney was able to drive runs of up to 10 hours and sleep in a motel at his destination. Due to changes at the company and union seniority rules, Maloney was no longer eligible to drive the 10 hour runs. His sole option was the sleeper cab run in which two drivers alternated driving and sleeping in the truck cab. Maloney informed the company that he was unable to drive sleeper cab runs because of his kidney condition and supported his position with a medical opinion. He offered to work as a temporary employee if given 10 hour runs but the company rejected that offer. Maloney filed suit against the company alleging disability discrimination in violation of FEHA. (*Maloney*, *supra*, 16 Cal.App.4th at p. 1286.)

The trial court granted the company's motion for summary judgment on the ground that Maloney was not a "'handicapped individual'" under FEHA and its regulations. (*Maloney*, *supra*, 16 Cal.App.4th at p. 1287.)[2]

The Court of Appeal affirmed the judgment. It cited the uncontradicted evidence that Maloney was physically able to drive a truck and in fact worked as a truck driver for other companies after he could no longer drive for the defendant. The court concluded, therefore, that Maloney was "not *substantially limited* in employment and not a

---

[2]    In 1992 the Legislature substituted the term "physical disability" for "physical handicap." (Former § 12920, as amended by Stats. 1992, ch. 913, § 19.)

'handicapped individual' as that term is defined, even though he could not sleep in the cab of the moving vehicle." (*Maloney*, *supra*, 16 Cal.App.4th at p. 1288; italics added.)

Safari argues that we should not follow *Maloney* because the Legislature has amended FEHA to make clear that the test for disability protection is whether the disability "limits" a major life activity such as working, not whether it "*substantially* limits*" that activity as the *Maloney* court believed. (*Maloney*, *supra*, 16 Cal.App.4th at p. 1288.) Section 12926.1, subdivision (c) states: "[T]he Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990 [ADA], a 'substantial limitation.' This distinction is intended to result in broader coverage under the law of this state than under that federal act."

The issue in this case, however, is not the degree of Safari's work limitation but whether she suffers from a work limitation at all. We believe *Maloney* reached the right result to the extent that it held an employee is not limited in the major life activity of working if the limitation only affects the employee's ability to work a particular shift, and not their ability to perform their particular employment, i.e. truck driver. In *Maloney*, the plaintiff was able to perform the job of truck driver, just not on runs longer than 10 hours. Here, Safari is able to perform the job of Supervising Nurse, just not on the early morning shift at the CTC. That difficulty is not a limitation on working recognized under FEHA.

In concluding that Safari does not have a disability that limits her occupation as a Supervising Nurse, we note that Safari's work-related stress differs from other medical conditions that entitle an employee to protection under FEHA. A visually impaired person, for example, will be visually impaired no matter the shift or location to which she is assigned. (*Bryan v. United Parcel Service, Inc.* (N.D. Cal. 2004) 307 F.Supp.2d 1108, 1114.) Safari's stress-related disabilities, however, are triggered only when she is assigned to a certain shift at a certain jail facility. It stands to reason that every employee would want to work in a stress-free environment. But if job-triggered stress was

9

sufficient to require an employer to reassign the employee to another shift or location or supervisor then the employee could dictate to the employer the job she will agree to perform and the conditions under which she will perform it. (*Dewitt v. Carsten* (N.D. Ga. 1996) 941 F.Supp. 1232, 1235 [jail employee's job-related stress did not entitle her to reassignment under the ADA].) We do not believe this was the intent of our Legislature in enacting and amending the FEHA.

### III. SAFARI'S CAUSE OF ACTION FOR RETALIATION FAILS BECAUSE SHE CANNOT ESTABLISH THAT SHE ENGAGED IN PROTECTED ACTIVITY UNDER FEHA.

It is an unlawful employment practice "[f]or any employer . . . to discharge, expel, or otherwise discriminate against *any person* because the person has opposed any practices forbidden under this part or because the person has filed a complaint . . . under this part." (§ 12940, subd. (h); italics added.) The plaintiff bringing a retaliation cause of action under subdivision (h) need not establish that she is a member of a protected class under FEHA, only that she is a "person" who engaged in a "protected activity," i.e. that she opposed a practice that is forbidden by FEHA. (*Neally v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 380.)

Safari's complaint alleges that "she was retaliated against because of her disability and her requests for accommodation, as described above." This allegation is insufficient to state a cause of action for retaliation. In *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 652, we held that requesting an accommodation does not constitute a protected activity sufficient to support a claim for retaliation because it does not oppose a practice forbidden by FEHA.

10

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.